UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LORENA ABARZA RIOS, on behalf of herself and all
others similarly situated,

                                    Plaintiff,

                    -against-

SPIRIT PHARMACEUTICALS LLC,

                                    Defendant.
------------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:

**No. 2:23 Civ. 3637 (GRB) (JMW)**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**

---

PECHMAN LAW GROUP PLLC
Louis Pechman
Galen C. Baynes
Camille A. Sanchez
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
baynes@pechmanlaw.com
sanchez@pechmanlaw.com

*Attorneys for Plaintiff, the Putative Rule 23
Class, and the Conditional FLSA Collective*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...................................................................................................1

**PROCEDURAL BACKGROUND** ............................................................................................. 1

**I.     Background and Initial Proceedings** ........................................................................... 1

**II.    Collective Notice, Opt-In Proceedings, and Discovery** ............................................ 2

**III.   Article 9 Foreclosure, Settlement Negotiations, and Mediation** ............................ 4

**IV.    Settlement Terms and Structure** .................................................................................. 6

**ARGUMENT** ............................................................................................................................. 7

**I.     Class Action Settlement Approval Standard** ............................................................. 7

**II.    The Rule 23 Class Certification Requirements Are Satisfied** .................................. 9

    A.     Numerosity ............................................................................................................... 9
    B.     Commonality and Typicality ................................................................................... 9
    C.     Adequacy of Representation .................................................................................. 10
    D.     Predominance and Superiority ............................................................................... 11

**III.   The Proposed Settlement Is Fair, Adequate, and Reasonable** ............................... 13

    A.     Adequate Representation ....................................................................................... 14
    B.     Discovery and Arm's-Length Negotiations .......................................................... 14
    C.     Adequate Relief for the Class ................................................................................ 15
    D.     Equitable Treatment of Class Members ................................................................. 19
    E.     Ability of Defendant to Withstand Greater Judgment .......................................... 19

**IV.    The Proposed Notice Satisfies Due Process Requirements** ..................................... 20

**V.     Class Appointments** ..................................................................................................... 20

**CONCLUSION** ......................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................ 11, 12
*Avila v. Ardian Corp.*, No. 18 Civ. 4795 (FB) (TAM)
2022 U.S. Dist. LEXIS 146596 (E.D.N.Y. Aug. 16, 2022) .................... 10
*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ........................................................ 10
*Brazier v. Real Hosp. Grp., LLC*,
  2021 WL 7210088 (S.D.N.Y. Nov. 12, 2021) ............................... 8, 10
*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ..................................................... 8, 14
*Clark v. Ecolab, Inc.*,
  2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009) .................. 13
*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ........................................................... 9
*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ......................................................... 10
*D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21 Civ. 3334 (GRB) (JMW),
  2023 U.S. Dist. LEXIS 12344 (E.D.N.Y. Jan. 24, 2023) ............... Passim
*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................... 20
*Espinoza v. 953 Assocs. LLC*,
  280 F.R.D. 113 (S.D.N.Y. 2011) ..................................................... 9
*Glatt v. Fox Searchlight Pictures, Inc.*,
  811 F.3d 528 (2d Cir. 2016) .......................................................... 9
*Grant v. Glob. Aircraft Dispatch, Inc.*,
  204 N.Y.S.3d 117 (App. Div.) ....................................................... 17
*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ......................................................... 12
*Guthrie v. Rainbow Fencing Inc.*,
  113 F.4th 300 (2d Cir. 2024) .................................................... 16, 17
*Hernandez v. Merrill Lynch & Co., Inc.*,
  2012 WL 5862749 (KBF) ............................................................... 8
*In re Giant Interactive Grp., Inc.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................... 8
*Jackson v. Bloomberg, L.P.*,
  298 F.R.D. 152 (S.D.N.Y. 2014) ................................................... 13
*Karic v. Major Auto. Cos.*, No. 09 CV 5708 (CLP),
  2016 U.S. Dist. LEXIS 57782, (E.D.N.Y. Apr. 27, 2016) ..................... 8
*Li Zhen Zhu v. Wanrong Trading Corp.*, No. 18 Civ. 417 (ENV) (MMH),
  2024 U.S. Dist. LEXIS 179236, (E.D.N.Y. Sep. 30, 2024) ............... 18, 19
*Mangahas v. Eight Oranges Inc.*, No. 22 Civ. 4150 (LJL),
  2024 U.S. Dist. LEXIS 98151, ............................................... 9, 11,13

ii

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ................................................................................... 9
*Metcalf v. Transperfect Translations Int'l Inc.*, No. 19 Civ. 10104 (ER) (KHP)*,
  2023 U.S. Dist. LEXIS 236472 ................................................................ 10, 12, 13
*Monaco v. Historic Old Bermuda Inn, Inc.*,
  2020 U.S. Dist. LEXIS 267382 (E.D.N.Y. Apr. 3, 2020) ................................. 14,15
*Reyes v. Summit Health Mgmt., LLC*, No. 22 Civ. 9916 (VSB),
  2024 U.S. Dist. LEXIS 21061 (S.D.N.Y. Feb. 6, 2024) ........................................ 14
*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ................................................................................. 10
*Rosenfeld v. Lenich,* No. 18 Civ. 6720 (NGG) (PK)
  2021 U.S. Dist. LEXIS 26950 (E.D.N.Y. Feb. 4, 2021)........................................ 18
*Sanchez v. JMP Ventures, L.L.C.*,
  2015 WL 539506 (S.D.N.Y. Feb. 10, 2015) ......................................................... 10
*Sandoval v. Phillipe N. Am. Rests., LLC*, No. 16 Civ. 615 (VSB),
  2018 WL 1635034 (S.D.N.Y. Apr. 4, 2018) ................................................... 7, 8,13
*Sealock v. Covance, Inc.*, No. 17 Civ. 5857 (JMF),
  2020 U.S. Dist. LEXIS 44753, (S.D.N.Y. Mar. 13, 2020).................................... 19
*Torres v. Gistede's Operating Corp.*,
  2010 WL 2572937 (S.D.N.Y. June 1, 2010) ......................................................... 13
*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .............................................................................................. 12
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..................................................................................... 8
*Zivkovic v. Laura Christy LLC*,
  329 F.R.D. 61 (S.D.N.Y. 2018) ............................................................................ 13

**Statutes**

29 U.S.C. § 201 ........................................................................................................... 1
New York Labor Law § 190 ........................................................................................ 1

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................................... 9
Fed. R. Civ. P. 23(a)(2) ........................................................................................... 9, 10
Fed. R. Civ. P. 23(a)(4) ........................................................................................... 10
Fed. R. Civ. P. 23(b)(3)……………………………………………………………… 9, 11
Fed. R. Civ. P. 23(e) ............................................................................................. 7, 14

# PRELIMINARY STATEMENT

Subject to this Court's approval, Plaintiff Lorena Abarza Rios ("Plaintiff") and Defendant Spirit Pharmaceuticals LLC ("Defendant" or "Spirit Pharmaceuticals") have entered into a Settlement Agreement and Release (the "Settlement" or "Agreement")[1] to resolve this wage and hour action on a class basis. The proposed Settlement, reached despite Defendant's liquidation through an Article 9 Foreclosure transaction, resolves *bona fide* disputes on a class-wide basis and is a fair, reasonable, and adequate resolution that satisfied all criteria for preliminary settlement approval. Plaintiff respectfully requests that the Court: (a) certify for settlement purposes the Federal Rule of Civil Procedure ("FRCP") 23 Class;[2] (b) grant preliminary approval of the Parties' Agreement; (c) appoint Plaintiff as the Class Representative; (d) appoint Plaintiff's Counsel, Pechman Law Group PLLC ("PLG"), as Class Counsel; (e) appoint Arden Claims Service LLC as Claims Administrator; (f) grant approval of the Parties' proposed Notice; and (g) schedule a Final Settlement Approval Hearing.

# PROCEDURAL BACKGROUND

## I. Background and Initial Proceedings

Plaintiff was formerly employed as a machine operator by Spirit Pharmaceuticals, a pharmaceutical company that manufactures and distributes over-the-counter drugs. Pechman Aff. ¶¶ 4-5. Through her May 16, 2023 Complaint, Plaintiff asserted wage and hour claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law § 190 *et seq.* ("NYLL"), on behalf of herself and all similarly situated non-managerial employees at

---

[1] Unless otherwise defined, all capitalized terms and abbreviations used in this Memorandum are defined in the Parties' Agreement, attached to the Affirmation of Louis Pechman ("Pechman Affirm.") as Exhibit 1, and in the Pechman Affirmation.

[2] An FLSA Collective was previously conditionally certified by stipulation of the Parties and Order of the Court on November 6, 2023. Pechman Aff. ¶ 16.

Defendant's Ronkonkoma, New York facility. *Id.* ¶ 6.[3] Plaintiff alleged that she and other similarly situated employees regularly worked over forty hours per workweek but were paid at "straight-time" rates (*i.e.*, the same regular hourly rate) for all hours worked over forty per workweek, in violation of the FLSA and NYLL. *Id.* ¶ 8.[4] Plaintiff further alleged that she: (1) was not provided with spread-of-hours in violation of the NYLL, and (2) did not receive wage notices or accurate wage statements, in violation of the NYLL's Wage Theft Prevention Act ("WTPA"). *Id.* Plaintiff also alleged that although she was a manual worker entitled to be paid on a weekly basis under the NYLL, Defendant unlawfully paid her wages on a biweekly basis for portions of her employment. *Id.* ¶ 10. Defendant filed its Answer on July 13, 2023, generally denying the material allegations of the Complaint. *Id.* ¶ 12. The Court held an initial pre-trial conference on September 8, 2023, and entered an Order scheduling the completion of discovery by March 29, 2024. *Id.* ¶ 13.

## II.     Collective Notice, Opt-In Proceedings, and Discovery

Plaintiff served her first set of document requests and interrogatories on Defendant on October 2, 2023. *Id.* ¶ 14. Meanwhile, the Parties engaged in discussions regarding an agreement to stipulate to conditional certification of an FLSA collective action, resulting in the submission of a proposed stipulation (the "Collective Stipulation") and proposed notice to potential FLSA opt-in members ("FLSA Notice") on November 3, 2023, which were approved and entered by the Court. *Id.* ¶ 15-16.

Per the Collective Stipulation, Defendant produced an Excel list containing contact information for 985 non-managerial employees that had been employed by Defendant within the three years prior to the commencement of the Action (the "Collective List"). *Id.* ¶ 17. The FLSA

---

[3] Plaintiff's Complaint asserted her FLSA claims on a collective action basis and NYLL claims on an FRCP 23 class basis. *Id.* ¶ 6.

[4] Plaintiff also asserted a NYLL minimum wage claim arising from alleged time shaving practices.

Notice was posted in Defendant's facility and Plaintiff's counsel prepared and mailed the FLSA Notice and Consent to Sue forms to all non-managerial employees on the Collective List in January 2024. *Id.* ¶ 19. 97 current and former employees of Spirit Pharmaceuticals returned consent to sue forms and joined the action as FLSA Opt-In Plaintiffs. *Id.* ¶ 20. Plaintiff's counsel interviewed approximately 62 of the Opt-In Plaintiffs to gather relevant information. *Id.* ¶ 21.

Given the large number of Opt-In Plaintiffs who returned consent to sue forms, counsel for the Parties engaged in discussions regarding the selection of representative Opt-In Plaintiffs for purposes of analyzing liability and engaging in settlement discussions on a collective and class basis. *Id.* ¶ 22. The Parties agreed to the exchange of time and payroll records for twenty representative Opt-In Plaintiffs and informed the Court of the same on April 19, 2024. *Id.* ¶ 23-24. Defendant produced approximately 4000 pages of payroll and time records for those Opt-In on April 17, 2024. *Id.* ¶ 25.

Plaintiff's counsel reviewed the productions and, in consultation with Plaintiff, determined that there were still certain gaps relevant to liability analysis. *Id.* ¶ 27. Plaintiff's counsel raised the discovery issue with Defendant and produced available records from Plaintiff reflecting alleged non-payroll wage payments, but Defendant informed that it had produced all relevant records in its possession. *Id.* ¶ 28. To ensure all relevant payroll records were collected, Plaintiff's counsel issued a third-party subpoena to payroll provider Paycom commanding the production of pre-January 2021 payroll records for the applicable Opt-In Plaintiffs on August 8, 2024, to which Paycom responded with a production. *Id.* ¶ 29.

While this discovery was ongoing, counsel for the Parties continued to engage in discussions regarding the potential for resolution of the Action on a class basis. The parties agreed to participate in a private mediation on a class basis before Martin Scheinman, Esq., ("Mediator

Scheinman") and informed the Court of the same on May 31, 2024, resulting in a stay of further deadlines pending the outcome of mediation. *Id.* ¶ 31-33.

## III. Article 9 Foreclosure, Settlement Negotiations, and Mediation

In anticipation of the mediation, Plaintiff's counsel analyzed all available time and payroll records, engaged in discussions with Plaintiff, and consulted with and reviewed information gathered from the interviews with the approximately 62 Opt-In Plaintiffs. *Id.* ¶ 34. Because the overtime claims arose from off-the-clock hours for which Defendant instructed putative Class Members not to punch and did not provide them with payroll checks, documentation directly evidencing overtime hours worked by the putative class was extremely limited. *Id.* ¶ 35. For purposes of class damages for settlement purposes and based on the available information received from Plaintiff and the Opt-In Plaintiffs, Plaintiff's counsel therefore assumed that putative Class Members regularly worked eight hours of overtime per week and calculated overtime damages by multiplying this average number of weekly overtime hours by the number of weeks worked by individual Class Members in the liability period. *Id.* ¶ 36.

On September 17, 2024, Defendant requested a pre-mediation audience before Mediator Scheinman to discuss rapidly developing circumstances that would impact the prospects of settlement in the action. *Id.* ¶ 38. During the Parties' conference call before Mediator Scheinman on September 18, 2024, Defendant's counsel advised that as a result of Defendant's debt obligations: (i) Defendant's owners had been relieved of their duties; (ii) a Chief Restructuring Officer with management authority over Defendant's affairs had been installed; (iii) Defendant's senior secured lender had begun efforts towards an Article 9 Foreclosure transaction to recover on the approximately $13 million in debt owed by Defendant, and that the transaction's closure would leave Defendant with no assets; and (iv) SC&H Capital had been retained to conduct an Article 9 auction. *Id.* ¶ 39. Defendant's counsel further advised that neither Article 9 foreclosure transaction

nor a direct foreclosure by the senior secured lender on Defendant's assets would satisfy Defendant's debt to the senior secured lender in full. *Id.* ¶ 40. A purchaser of the senior secured lender's collateral had been identified following an auction, but the viability of the Article 9 Foreclosure transaction was dependent in part on the resolution of the claims in the instant Action to resolve concerns with potential successor liability. *Id.* In other words, either the Parties could attempt to negotiate a full resolution of the Action on a class basis that would ensure that the Article 9 Foreclosure transaction was financially practicable for the purchaser and senior secured creditor while resolving the claims, or the purchaser would back out of the Article 9 Foreclosure transaction and the senior secured creditor would foreclose on Defendant's assets directly to partially satisfy Defendant's debt, resulting in the liquidation of Defendant's assets and the absence of any resolution or recovery for Plaintiff and the Class Members.

Following the pre-mediation conference, Plaintiff's counsel requested documentation confirming the underlying financial circumstances and foreclosure proceedings confronted by Defendant. *Id.* ¶ 41. Given the sensitive nature of the financial documentation, the Parties negotiated a Stipulation for the Production of Highly Confidential Attorney's-Eyes-Only Information, which was filed on September 20, 2024. *Id.* ¶ 42. Counsel for Defendant then produced documentation confirming Defendant's debt to its senior secured creditor and the status of the ongoing proceedings in the Article 9 Foreclosure transaction. *Id.*

After the production of documentation regarding Defendant's debt obligations and the Article 9 Foreclosure sale proceedings, counsel for the Parties, representatives of SC&H, and counsel in the foreclosure proceedings participated in a mediation before Mediator Scheinman. *Id.* ¶ 45. As a result of the mediation, the Parties reached a settlement in principle for the total sum of $1.5 million to fully resolve the Action on a class basis, contingent on the closure of the Article

5

9 Foreclosure transaction and transfer of the Settlement Amount to a third-party escrow account maintained by a claims administrator, Arden Claims Service LLC ("Arden"). *Id.* ¶ 46. The Parties thereafter prepared an agreement memorializing the full settlement terms, which are further detailed below. On November 6, 2024, Defendant confirmed the transfer of the Settlement Amount to Arden coincident with the closure of the Article 9 Foreclosure transaction, satisfying the contingency for the Parties' Agreement to become effective. *Id.* ¶ 48.

## IV. Settlement Terms and Structure

The Settlement provides for full resolution of Plaintiff's and the Class Members' claims under the FLSA and NYLL in exchange for payment of the total Settlement Amount of $1,500,000. *Id.* ¶ 50. The principal terms of the Settlement are as follows:[5]

To satisfy the Condition Precedent requiring deposit of the Settlement Amount to the Qualified Settlement Fund within five days of the Article 9 Foreclosure closing, the Settlement Amount has been deposited to the QSF maintained by putative Claims Administrator Arden Claims Service LLC. *Id.* ¶ 50(a). Subject to the Court's approval, Arden will be responsible for distributing notice to Class Members and administration of the Settlement. *Id.* ¶ 50(d).

The putative Class Members are Plaintiff, the Opt-In Plaintiffs, and all non-managerial employees who worked for Spirit Pharmaceuticals LLC at any time between May 16, 2017, and October 25, 2023. *Id.* ¶ 50(b). The Net Settlement Fund is equal to the Settlement Amount after deductions for: (1) the Claims Administrator's fees and costs;[6] (2) Court-approved attorneys' fees

---

[5] Plaintiff respectfully refers the Court to the Parties' Agreement, Ex. 1 to the Pechman Aff., for a full recitation of the Agreement's terms.

[6] Arden has quoted administration services fees and costs of $38,000.00. *Id.* ¶ 50(g).

and costs for Class Counsel;[7] and (3) the Court-approved Service Award to Plaintiff,[8] and is inclusive of any applicable employer FICA withholdings.  *Id.* ¶ 50(c).  Each Participating Class Member will receive a percentage of the Net Settlement Fund correlating to the number of weeks that the Participating Class Member worked for Defendant within the Liability Period.  *Id.* ¶ 50(i).  Because this is a hybrid class and collective Action, Participating Class Members[9] will release their NYLL wage and hour claims in exchange for their receipt of a Settlement Check.  *Id.* ¶ 50(k).  By cashing their Settlement Checks, Participating Class Members opt-in to the Action, become FLSA Collective Members, and release all wage and hour claims under the FLSA.  *Id.* ¶ 50(i).  Participating Class Members will have 365 days from the date of the mailing of the Settlement Checks to cash them.  *Id.* ¶ 50(m).

## ARGUMENT

### I.  Class Action Settlement Approval Standard

Class action settlement approval involves two steps: (a) preliminary approval, resulting in dissemination of notice to potential class members; and (b) review of the adequacy, fairness, and reasonableness of the proposed settlement during a final settlement approval hearing.  Fed. R. Civ. P. 23(e). In approving a class settlement, courts first consider whether the requirements of Rule 23(a) and (b) are satisfied.  *See, e.g.*, *Sandoval v. Phillipe N. Am. Rests., LLC*, No. 16 Civ. 615 (VSB), 2018 WL 1635034, at *2 (S.D.N.Y. Apr. 4, 2018). If so, courts then assess whether the settlement satisfies procedural and substantive fairness requirements.  *See, e.g., Karic v. Major*

---

[7] Class Counsel will request fees in the amount of 33.33% of the Settlement Payment (*i.e.*, $500,000), inclusive of reimbursement of Class Counsel's actual litigation expenses and costs. *Id.* ¶ 50(h).

[8] Plaintiff will request a service award of $20,000 for her contributions to and participation in the Action. *Id.* ¶ 50(f).

[9] Participating Class Members are all Class Members who do not submit a valid Opt-Out Statement.  *Id.* ¶ 50(j).

*Auto. Cos.*, No. 09 CV 5708 (CLP), 2016 U.S. Dist. LEXIS 57782, at *14 (E.D.N.Y. Apr. 27, 2016) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

"Settlement approval is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement. *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 159-60 (S.D.N.Y. 2011) (quotation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749 (KBF) (DCF), *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class actions). Courts evaluating proposed class settlements recognize a "proper deference to the private consensual decision of the parties." *Brazier v. Real Hosp. Grp., LLC,* No. 20 Civ. 08239 (VM), 2021 WL 7210088, at *2 (S.D.N.Y. Nov. 12, 2021) (citations omitted).

By this unopposed Motion, Plaintiff requests that the Court take the first step in the settlement approval process by conditionally certifying the Rule 23 Class and preliminarily approving the Settlement. At this stage, the Court "need only find 'probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness.'" *Sandoval*, 2018 WL 1635034, at *4 (quotation omitted); *see also D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21 Civ. 3334 (GRB) (JMW), 2023 U.S. Dist. LEXIS 12344, at *22 (E.D.N.Y. Jan. 24, 2023) (during preliminary approval the court must only evaluate "the settlement for fairness, adequacy, and reasonableness, and to ensure the agreement is not a product of collusion.") (citation omitted). Here, the conditional class certification requirements of Rule 23 are met for settlement purposes, and the settlement is procedurally and substantively fair, adequate, and reasonable.

**II.      The Rule 23 Class Certification Requirements Are Satisfied**

In evaluating a conditional class certification motion, a district court must determine that "the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation," and the Rule 23(b)(3) requirement that common questions of law and fact predominate and a class action is a superior method of "fairly and efficiently adjudicating the controversy" are satisfied. *D'Angelo*, 2023 U.S. Dist. LEXIS 12344, at *11 (E.D.N.Y. Jan. 24, 2023) (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016)).  They are satisfied here.

**A.      Numerosity**

Numerosity requires that "the class [be] so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Here, the numerosity requirement is plainly satisfied as the proposed Class consists of approximately 1,156 non-managerial employees who were employed at Defendant's pharmaceutical manufacturing facility within the Liability Period.  *See* Pechman Aff. ¶ 32.

**B.      Commonality and Typicality**

Commonality examines whether "there are questions of law or fact [that are] common to the class."  Fed. R. Civ. P. 23(a)(2).  "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices."  *Mangahas v. Eight Oranges Inc.*, No. 22 Civ. 4150 (LJL), 2024 U.S. Dist. LEXIS 98151, at *19 (S.D.N.Y. May 31, 2024) (quotation omitted).  "[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification."  *Id.* (*citing Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 128 (S.D.N.Y. 2011) (collecting cases).  The "typicality requirement

is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Id.* at *29 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). In other words, the showing requires that a plaintiff's claims be "typical of the claims . . . of the class." *Avila v. Ardian Corp.,* No. 18 Civ. 4795 (FB) (TAM), 2022 U.S. Dist. LEXIS 146596, at *6 (E.D.N.Y. Aug. 16, 2022). "The commonality and typicality requirements tend to merge into a single inquiry" that is "easily satisfied by a single common issue." *Id.* at *7 (citations omitted).

The commonality and typicality requirements are satisfied here because Plaintiff and the Class Members are all non-managerial employees at Defendant's Ronkonkoma pharmaceutical facility whose claims arise out of the same alleged common policies and practices of Defendant in failing to pay overtime premiums for hours worked over forty per week, failing to make timely wage payments, and failing to provide requires wage notices and statements. Pechman Aff. ¶¶ 8-10. *See, e.g., Metcalf v. Transperfect Translations Int'l Inc.*, No. 19 Civ. 10104 (ER) (KHP), 2023 U.S. Dist. LEXIS 236472, at *21 (S.D.N.Y. Nov. 6, 2023) ("A common policy of failing to provide overtime is sufficient to satisfy Rule 23(a)(2) commonality.") (collecting cases); *D'Angelo*, 2023 U.S. Dist. LEXIS 12344, at *15 (common overtime wage claims satisfied commonality and typicality requirements); *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (GWG), 2015 WL 539506, at *3 (S.D.N.Y. Feb. 10, 2015) (same where there were common wage and wage statement claims).

### C.    Adequacy of Representation[10]

Plaintiff shares the same claims and suffered the same injuries as the Class Members. Plaintiff has a sufficient stake in the litigation, has actively assisted in the prosecution of the case,

---

[10] Rule 23(a) requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determination of adequacy typically 'entails inquiry as to whether: 1) plaintiff's

and does not have claims that are antagonistic to those of the Class Members.  Pechman Aff. ¶¶ 52-53; *see, e.g., Mangahas*, 2024 U.S. Dist. LEXIS 98151, at *35-36 ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.") (quotation omitted); *see also D'Angelo*, 2023 U.S. Dist. LEXIS 12344, at *15-16 (E.D.N.Y. Jan. 24, 2023).

Class Counsel, PLG, has extensive experience prosecuting and settling wage-and-hour class actions, has routinely been appointed as class counsel in FLSA and NYLL actions, is fully aware of controlling law and its impact on the Action and settlement prospects, and is qualified to represent the interests of the Class Members fairly and adequately.  Pechman Affirm. ¶ 58, 60-68. PLG has expended substantial time and effort litigating this Action from inception through Settlement, including through its investigation of the claims, discovery, management of the FLSA notice and opt-in procedures, review of thousands of payroll records, interviews with approximately 62 Opt-In Plaintiffs, and negotiation of a proposed Settlement that will permit Plaintiff and the Class Members a significant recovery despite Article 9 Foreclosure transaction. *Id.* ¶ 59.

### D. Predominance and Superiority

Certification is appropriate under Rule 23(b)(3), which requires (1) that common questions of fact or law predominate over individual questions; and (2) that a class action be a superior

---

interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

method to adjudicate the controversy fairly and efficiently. Fed. R. Civ. P. 23(b)(3).[11] Predominance examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately[.]" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted).

"[I]n the wage and hour case, establishing a uniform practice or scheme that deprives the proposed class of overtime wages may constitute a significant step towards establishing liability to all class members and justify a finding of predominance even if exact hours worked cannot be proven on a classwide basis.'" *Metcalf*, 2023 U.S. Dist. LEXIS 236472, at *31 (quotations omitted); *see also D'Angelo*, 2023 U.S. Dist. LEXIS 12344, at *17 ("[T]he common question of Defendants' alleged failure to pay overtime wages predominates over any varying factual or legal theories that may exist among Class Members.") (citations omitted). Such is the case here, as the common issue of Defendant's maintenance of a policy and practice of, *inter alia*, failing to pay overtime wages to Plaintiff and the Rule 23 Class predominates over any varying fact issues among the Class Members.

Proceeding on a class basis is also "superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Windsor*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring

---

[11] Because certification is occurring in the settlement context, there will be no trial, and thus the Court need not address the manageability requirements of Rule 23(b)(3). *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (reasoning settlement-only class would not present intractable management problems "for the proposal is that there be no trial").

a solo action prosecuting his or her rights."). "'[A] class action is a superior method to individually litigating [] NYLL claims,' particularly where some employees may be entitled to 'substantial' amounts of unpaid overtime, but many employees 'who worked relatively few overtime hours are unlikely to initiate individual actions.'" *Metcalf,* 2023 U.S. Dist. LEXIS 236472, at *39-40 (quoting *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 169 (S.D.N.Y. 2014). Here, the size of the putative Class and the absence of other wage and hour litigation by Class Members reflect that it is "unlikely that the class members would engage in individual action because the amount of potential recovery is low and likely to be outweighed by the individual cost of litigation." *Mangahas*, 2024 U.S. Dist. LEXIS 98151, at *44 (quoting *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 76 (S.D.N.Y. 2018); *see* Pechman Aff. ¶¶ 32, 54. This is particularly true given that a significant number of the Class Members worked short periods of time with Defendant such that their potential recovery is low. Pechman Aff. ¶ 54; *see D'Angelo,* 2023 U.S. Dist. LEXIS 12344, at *19 ("[G]iven the expense of litigation and the size of numerous individual claims proceeding as a class action here is more economically sensible.") (quotation omitted). The forum is also convenient as both Defendant's facility and the Class Members are located in New York.

### III. The Proposed Settlement Is Fair, Adequate, and Reasonable

The proposed Settlement merits preliminary approval as a fair, adequate, and reasonable resolution of the Action. As noted, preliminary approval requires only that a court "find 'probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *Sandoval*, 2018 WL 1635034, at *2. If the Settlement "'appears to fall within the range of possible approval,' the court should order that the class members receive notice of the settlement." *Torres v. Gistede's Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (citation omitted); *see also id.* ("Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written

submissions and an informal presentation by the settling parties.") (quoting *Clark v. Ecolab, Inc.*, 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 17, 2009)).  Courts in this circuit have conducted this analysis based on the factors set forth in Rule 23(e)(2)[12] and in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974),[13] which share considerable overlap.  *D'Angelo*, 2023 U.S. Dist. LEXIS 12344, at *22-23.

### A.      Adequate Representation

For the reasons discussed above in Section II(C), Plaintiff and PLG are both adequate representatives of the proposed Class.

### B.      Discovery and Arm's-Length Negotiations

The existence of "arm's-length negotiations between experienced capable counsel after meaningful discovery" counsel in favor of preliminary settlement approval.  *Monaco v. Historic Old Bermuda Inn, Inc.*, 2020 U.S. Dist. LEXIS 267382, at *5 (E.D.N.Y. Apr. 3, 2020); *see also Reyes v. Summit Health Mgmt., LLC*, No. 22 Civ. 9916 (VSB), 2024 U.S. Dist. LEXIS 21061, at *7 (S.D.N.Y. Feb. 6, 2024) (same).  The Parties here engaged in substantial discovery regarding the claims, including, *inter alia*, through the exchange of approximately 4,000 payroll and time records for twenty representative Opt-In Plaintiffs and Plaintiff's counsel's inquiry into the Class

---

[12] These factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

[13] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

claims through interviews with approximately 62 Opt-in Plaintiffs. Pechman Aff ¶¶ 25, 34. Plaintiff's counsel utilized this information to prepare class damages in anticipation of a class mediation. *Id.* ¶ 36. The contours of the negotiations were markedly impacted by Defendant's underlying financial circumstances and its senior secured creditor's Article 9 Foreclosure proceedings. *Id.* ¶¶ 39-40. With the aid of Mediator Scheinman, the Parties engaged in extensive arm's length negotiations, resulting in a settlement in principle for the total sum of $1.5 million to resolve the Action on a class basis, contingent on the closure of the Article 9 Foreclosure transaction. *Id.* ¶ 46. The Settlement, reached only after meaningful discovery and "as a result of arm's-length negotiations between capable counsel and with the assistance of an experienced neutral third-party mediator," is fair, reasonable, and adequate. *See Monaco*, 2020 U.S. Dist. LEXIS 267382, at *6.

### C. Adequate Relief for the Class[14]

#### i. Costs, Risks, and Delay of Trial and Appeal[15] and Reasonableness of Settlement

Under normal circumstances, continued litigation in this matter would implicate the standard significant costs, risks, and delay of continued discovery, a trial, and any subsequent appeals. But the circumstances of this case are not normal. As a result of the Article 9 Foreclosure transaction, Defendant is no longer an operational corporate entity. Pechman Aff. ¶ 49. It was only through the Parties' negotiation of the Settlement, which required that $1.5 million of the

---

[14] To determine whether a proposed settlement provides adequate class relief, courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class . . .; (iii) the terms of any proposed award of attorney's fees . . .; and (iv) any agreement required to be identified under Rule 23(e)(3)." *D'Angelo*, 2023 U.S. Dist. LEXIS 12344, at *26 (quoting FRCP 23).

[15] "This Rule 23(e)(2) factor subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation (*Grinnell* Factor 1), risks of establishing liability (*Grinnell* Factor 4), the risks of establishing damages (*Grinnell* Factor 5), and the risks of maintaining the class through trial (*Grinnell* Factor 6)." *D'Angelo*, 2023 U.S. Dist. LEXIS 12344, at *26 (quotation omitted).

Article 9 Foreclosure transaction be set aside to resolve the Action, that Plaintiff and the putative Class will see recovery at all. Absent the Article 9 Foreclosure transaction, a direct foreclosure on Defendant's assets by its senior secured lender was imminent, in which case Plaintiff and the putative Class would have seen no relief. Further, because Defendant is no longer an operational entity, absent the instant Settlement there is no effective avenue for recovery. Even if Plaintiff were to obtain a judgment after continued litigation, any monetary recovery would be contingent on the successful prosecution of a separate successor action, the viability of which is entirely unknown. These circumstances militate heavily in favor of settlement approval.

Apart from these circumstances, Plaintiff and the putative Class face substantial risks to establishing liability and damages if this litigation were to continue. In the absence of records reflecting overtime hours worked, there are significant *bona fide* disputes between the Parties regarding the extent of overtime damages. Pechman Aff. ¶ 36. Based on the available records and consultations with Opt-In Plaintiffs, the class damages calculations prepared by Plaintiff's counsel for mediation purposes assumed that putative Class Members regularly worked eight overtime hours per week. *Id.* ¶ 36. This assumption was disputed by Defendant, and Plaintiff and the putative Class would face considerable risk in establishing overtime damages in continued litigation given the general lack of record evidence of overtime hours worked and pay received.

The WTPA wage notices and statement claims face similar risks, as Defendant produced wage notices in discovery for each of the representative Opt-In Plaintiffs, presenting a significant risk to Plaintiff's ability to establish liability and recover the approximately $3.7 million in claimed damages for the wage notice violations. *Id.* ¶ 37. Further, while the Parties dispute whether the wage statements provided to Plaintiff and the putative Class were accurate, any recovery in a continued litigation on this alleged violation is also uncertain in light of the Second Circuit's recent

decision in *Guthrie v. Rainbow Fencing Inc.,* 113 F.4th 300 (2d Cir. 2024) clarifying that Article III standing for such claims is only available where a plaintiff sufficiently alleges a concrete injury-in-fact.

The most sizeable category of damages alleged by Plaintiff and the putative Class arise from the untimely wage payment claims under NYLL § 191, accounting for approximately $23 million and 60% of the total alleged damages. *Id.* ¶ 37. These claims face even greater risk in a continued litigation given the current split in New York State courts on the availability of a private right of action for NYLL § 191 claims. Notably, the claims arise in Suffolk County, located within New York's Appellate Division, Second Department, which has held that no private right of action exists for NYLL § 191 claims. *See Grant v. Glob. Aircraft Dispatch, Inc.,* 204 N.Y.S.3d 117, 125 (App. Div.). Pending resolution of the state court split, Plaintiff and the putative Class face a potential loss of any recovery on the NYLL § 191 claims in a continued litigation.

These litigation uncertainties and the concrete risk that Plaintiff and the putative Class will see no recovery at all absent the Settlement due to closing of the Article 9 Foreclosure transaction and Defendant's liquidation support settlement approval. The Settlement is also reasonable "in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation," *D'Angelo,* 2023 U.S. Dist. LEXIS 12344, at *37, as it resolves *bona fide* disputes of fact and issues of law that present a significant risk to Plaintiff's and putative Class's ability to establish liability and damages.

### ii. Adequacy of Method for Distribution of Relief

Claims Administrator Arden Claims Service LLC will be responsible for distributing Notices and Settlements Shares to Class Members. Pechman Aff. ¶ 50(d). Arden is required to take measures to locate Class Members in the event of a returned mailing. *Id.* ¶ 50(d)-(e). Class

Members are additionally afforded a 365-day period to claim their Settlement Share by cashing settlement checks. *Id.* ¶ 50(m).

### iii.    Awards

As Class Counsel, PLG will seek an award of no more than $500,000, representing one-third (33.33%) of the Qualified Settlement Fund. Pechman Aff. ¶ 50(h). "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Rosenfeld v. Lenich*, No. 18 Civ. 6720 (NGG) (PK), 2021 U.S. Dist. LEXIS 26950, at *19 (E.D.N.Y. Feb. 4, 2021) (quotation omitted) (collecting cases). Moreover, the requested attorneys' fee award is inclusive of the costs and expenses incurred by PLG in this litigation. Pechman Aff. ¶ 50(h).

Plaintiff played an instrumental role in prosecuting this Action, as fully set forth in the Pechman Affidavit. Pechman Aff. ¶ 53. She was key to counsel's investigation of the matter, assisted in discovery and the review and analysis of records, maintained communication with former coworkers, advised PLG of developments at Defendant's facility, and assisted in the negotiation of the proposed Settlement. *Id.* ¶ 53. For the services she performed shouldering risk as the sole named Plaintiff on behalf of the putative Class, the proposed Settlement contemplates that Plaintiff receive a service award of $20,000, within the range of awards approved in this Circuit. *Id.* ¶ 50(f) ; *see, e.g., Li Zhen Zhu v. Wanrong Trading Corp.,* No. 18 Civ. 417 (ENV) (MMH), 2024 U.S. Dist. LEXIS 179236, at *56 (E.D.N.Y. Sep. 30, 2024) (approving $20,000 service award to the named plaintiff).

### iv. Agreements Required to be Identified Per Rule 23(e)(3)[16]

Arden's estimated fees and costs of $38,000 to administrate the settlement in this matter are reasonable given the size of the Rule 23 Class. *See Sealock v. Covance, Inc.*, No. 17 Civ. 5857 (JMF), 2020 U.S. Dist. LEXIS 44753, at *8 (S.D.N.Y. Mar. 13, 2020). Further, the proposed Settlement provides that those Class Members who do not opt-out of the Settlement will release only their NYLL wage and hour claims, while those Class Members who endorse their settlement checks will release FLSA claims arising in the Liability Period. Pechman Aff. ¶¶ 50(k)-(l). "Settlement agreements with nearly identical release language are often granted approval." *See e.g.*, *D'Angelo*, 2023 U.S. Dist. LEXIS 12344, at *34 (collecting cases).

### D. Equitable Treatment of Class Members

The Settlement calls for the Net Settlement Fund to be distributed to Class Members according to proportionate shares calculated based on the number of weeks each Class Member worked during the Liability Period. Pechman Aff. ¶ 50(i). Courts have determined that this *pro rata* method of distribution satisfies the equitable treatment requirement. *See, e.g., Wanrong Trading Corp.*, 2024 U.S. Dist. LEXIS 179236, at *28 (E.D.N.Y. Sep. 30, 2024) (apportionment of relief based on weeks worked equitable in wage and hour class action). Further, as discussed above in Section III(c)(iv), the proposed service award to Plaintiff is appropriate.

### E. Ability of Defendant to Withstand Greater Judgment

This factor militates heavily in favor of preliminary approval of the proposed Settlement. As a result of the Article 9 Foreclosure transaction, Defendant's assets have been liquidated and it is dissolving. Absent approval of the proposed Settlement, Plaintiff and the putative Class are unlikely to see recovery at all on their claims, as any judgment secured would not be collectible

---

[16] This Court has identified Claims Administration fees and release provisions relevant considerations under Rule 23(e)(3). *D'Angelo*, 2023 U.S. Dist. LEXIS 12344.

against Defendant. Accordingly, for the reasons set forth in this Section III, Plaintiff respectfully requests that the Court find that the proposed Settlement is fair, reasonable, and adequate and preliminary approve the same.

## IV. The Proposed Notice Satisfies Due Process Requirements

Rule 23(c)(2)(B) requires class action notices to be clear, concise, and written in "easily understood language." Fed. R. Civ. P. 23(c)(2)(B). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford[s] them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974). The proposed Notice here satisfies the requirements of Rule 23 and provides all information necessary to inform Class Members of their rights with respect to the Settlement. Pechman Aff. ¶ 55. The Notice will be mailed in English and Spanish and emailed and texted where possible and is the best and most practicable method of notifying Class Members of the Settlement. *Id.* ¶ 56.

## V. Class Appointments

Appointment of Plaintiff as Class Representative and PLG as Class Counsel is warranted for the reasons set forth in Section II(c), *supra*. Arden Claims Service LLC is an experienced settlement administrator fully capable of performing the claims administration duties called for in the Settlement that has been appointed to administer class settlements by numerous courts. *See, e.g.,* Arden Claims Service LLC, Why ACS (https://ardenclaims.com/why-arden-claims-service/).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (a) certify for settlement purposes the Federal Rule of Civil Procedure ("FRCP") 23 Class; (b) grant preliminary approval of the Parties' Agreement; (c) appoint Plaintiff as the Class Representative; (d) appoint Plaintiff's Counsel, PLG, as Class Counsel; (e) appoint Arden Claims Service LLC as Claims

Administrator; (f) grant approval of the Parties' proposed Notice; and (g) schedule a Final Settlement Approval Hearing. An appropriate proposed Order is attached to the Pechman Affidavit as Exhibit 4.

Dated: New York, New York
December 18, 2024

By:     /s/ Galen C. Baynes
        Louis Pechman
        Galen C. Baynes
        Camille A. Sanchez
        PECHMAN LAW GROUP PLLC
        488 Madison Avenue, 17th Floor
        New York, NY 10022
        pechman@pechmanlaw.com
        baynes@pechmanlaw.com
        sanchez@pechmanlaw.com
        Tel.: (212) 583-9500
        *Attorneys for Plaintiff, the Putative Rule 23
        Class, and the Conditional FLSA Collective*