UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LORENA ABARZA RIOS, *on behalf of herself and*
*all others similarly situated,*
                                  *Plaintiff*,

                                                                    **MEMORANDUM
                                                                    AND ORDER**
                                                                    23-CV-03637 (JMW)


                          -against-


SPIRIT PHARMACEUTICALS LLC,

                          *Defendant*.
-------------------------------------------------------------X

**A P P E A R A N C E S:**

          Louis Pechman
          Galen C. Baynes
          Camille A. Sanchez
          **Pechman Law Group PLLC**
          488 Madison Ave
          Suite 1704
          New York, NY 10022
          *Attorneys for Plaintiff, the Putative Rule 23 Class,*
          *and the Conditional FLSA Collective*

          Douglas E. Rowe
          **Certilman Balin Adler & Hyman, LLP**
          90 Merrick Avenue
          East Meadow, NY 11554
          *Attorney for Defendant*

**WICKS,** Magistrate Judge:

        On May 16, 2023, Plaintiff Lorena Abarza Rios ("Plaintiff" or "Abarza"), on behalf of

herself and others (the "Class Members"), commenced this wage and hour class and collective

action against Defendant Spirit Pharmaceuticals LLC ("Defendant" or "Spirit Pharmaceuticals")

asserting claims pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA")

1

and the New York Labor Law § 190, *et seq.* ("NYLL"), and the NYLL's Wage Theft Prevention Act, NYLL §§ 195, 198 ("WTPA"). [1]  (*See* generally ECF No. 1.)

Plaintiff and Class Members[2]  were employees of Spirit Pharmaceuticals, a manufacturer and distributor of over-the-counter drugs, who allegedly worked up to seventy-nine hours per week without overtime pay along with other violations. (ECF No. 1 at ¶ 1.) Following mediation efforts, the parties informed the Court that they reached a settlement in principle on a class basis and filed this instant Motion for Preliminary Approval of Class Settlement. (ECF Nos. 128, 131.)

Before the Court is Plaintiff's unopposed Motion for Preliminary Approval of Class Settlement.  (ECF Nos. 131-33.)  Plaintiff seeks an order: (1) certifying the Class for settlement purposes pursuant to Fed. R. Civ. P. 23; (2) granting preliminary approval of the Parties' Agreement ("Settlement Agreement"); (3) appointing Plaintiff as the Class Representative; (4) appointing Plaintiff's Counsel, Pechman Law Group PLLC ("PLG"), as Class Counsel; (5) appointing Arden Claims Service LLC as the "Claims Administrator"; (6) approving the Notice of Proposed Settlement and Class Action Lawsuit and Fairness Hearing ("Proposed Notice"), attached as Exhibit A to the Settlement Agreement; and (7) scheduling a Final Settlement Approval Hearing.

For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

---

[1] The specific claims alleged are: (i) Unpaid Minimum Wages under NYLL; (ii) Unpaid Overtime Wages under FLSA; (iii) Unpaid Overtime Wages under NYLL; (iv) Spread-of-Hours Pay under NYLL; (v) Failure to Provide Wage Notices under WTPA; (vi) Failure to Provide Wage Statements under WTPA; and (vii) Frequency of Payments under NYLL.

[2]  The Class Members are all individuals who held non-managerial positions at Defendant's Ronkonkoma, New York facility from May 16, 2017 through and including October 25, 2023. (*Id.* at ¶ 2; ECF No. 132 at 1-2, 6.)

# BACKGROUND

### *Factual Background*

While employed, Abarza worked as a packager and machine operator. (ECF No. 1 at ¶ 13.) On or about July 2019 through September 2019, Abarza worked seventeen hours per week. (*Id.* at ¶ 16.) On or about October 2019 through November 2019, Abarza worked seventy-nine hours per week. (*Id.* at ¶ 17.)  On or about December 2019 through April 2022, "with the exception of approximately two months from mid-March 2020 through May 26, 2020 when she did not work as a result of the Covid 19 pandemic," Abarza worked approximately fifty-nine hours per week. (*Id.* at ¶ 18.)  On or about May 2022 until the end of her employment on January 4, 2023, Abarza worked approximately forty-two hours per week. (*Id.* at ¶¶ 6, 19.)  Throughout the years, Abarza received $13 to $15 an hour without additional overtime rates. (*Id.* at ¶¶ 20-23.) Likewise, Abarza was never provided with spread-of-hours pay when she worked over ten hours in one day. (*Id.* at ¶ 24.) Prior to 2020, Defendant did not use a punch in and out system and would "shave-off" Plaintiff's and other employees' hours worked. (*Id.* at ¶ 25.)  Plaintiff alleges continued violations by Defendant of FLSA and NYLL laws by, *inter alia*, asking its workers not to use the punch system on the weekends, not providing wage notices or statements. (*Id.* at ¶¶ 27-32.)

### *Procedural Background*

Plaintiff commenced this class and collective action pursuant to claims FLSA and NYLL by filing her Complaint on May 16, 2023. (ECF No. 1.) Specifically, Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and collective action pursuant to the FLSA. (*Id.* at ¶¶ 33, 41-42.) Plaintiff sought declaratory and injunctive relief, and to recover, on behalf of herself and others similarly situated, (1) unpaid overtime wages, (2) spread-of-hours pay, (3) liquidated

damages, (4) statutory penalties, (5) pre and post judgment interest and (4) attorneys' fees and costs.  (*Id.* at 2.)

Defendant filed its Answer on July 13, 2023, denying all allegations and asserting defenses, *inter alia*, failure to state a claim, statute of limitations, and lack of class/collective requirements. (ECF No. 11.)  The parties then filed a joint status report stipulating to the conditional certification of an FLSA collective, which was so-ordered by the undersigned. (ECF Nos. 19-20.) On January 19, 2024, the undersigned granted a stay of discovery to allow the parties to proceed with the FLSA collective notices. (Electronic Order dated 1/19/2024.) On April 19, 2024, the parties advised that they had completed the process of notice distribution. (ECF No. 117.) On June 6, 2024, the undersigned granted an addition stay of discovery to allow meaningful efforts of the class mediation. (Electronic Order dated June 6, 2024.)  Due to Defendant's debt of approximately $13,000,000.00, the parties requested that as a condition of settlement, Defendant finalize an Article 9 Foreclosure transaction, and transfer 1.5 million dollars to the Claims Administrator, which occurred on November 6, 2024. (ECF No. 132 at 5-6.) On November 12, 2024, the parties advised the court that a settlement in principle on a class basis had been reached. (ECF No. 128.)

On December 18, 2024, Plaintiff filed the instant unopposed motion for preliminary approval of the class settlement.  (ECF No. 131.)

## THE PROPOSED SETTLEMENT

### *Settlement Amount*

The total settlement amount is $1,500,000 ("Settlement Fund").  (ECF No. 133-1 at §

3.1.)  This amount covers: (i) Class Members'[3] awards, (ii) Class Counsel attorneys' fees and

costs (not to exceed a third of the award—$500,000), (iii) Plaintiff's service award of $20,000,

(iv) expenses of the Settlement Claims Administrator, and (v) any applicable employer FICA

withholdings on Class Members' Individual Settlement Shares. (*Id.*)

The "Net Settlement Amount," is the gross Settlement Fund minus the amounts for

Settlement Claims Administrator's fees and costs, court approved attorneys' fees and costs for

Class Counsel, and court approved award for Plaintiff. (*Id.* at § 3.4(A).)  The Class Members will

receive their Individual Settlement Allocations from the Net Settlement Amount.  (*Id.*)

### *Class Member Release and Notice*

According to the Settlement Agreement, each Class Member agrees to release the

Releasees as defined in Section 1.30[4], from any and all wage and hour claims under the FLSA

and NYLL that could have been brought in this action from the period of May 16, 2020 to the

date of the final Court approval Order. (*Id.* at § 4.1.) However, the Members do not release their

FLSA until the settlement check is endorsed. (*Id.* at Exhibit A, 3.)

---

[3] "Class Members" as defined by the Settlement Agreement includes "Plaintiff, the Opt-in Plaintiffs, and all non-managerial employees who worked for [Defendant] at any time between May 16, 2017[,] to October 25, 2023."  (ECF No. 133-1 at § 1.7.)

[4] "'Releasees' means Defendant including, if different from Defendant, Designee, including each and all of Defendant's and Designee's respective directors, officers, employees, subsidiaries, affiliates, agents, assigns, representatives, parents, predecessors, successors, insurers, reinsurers, attorneys, benefit plans, secured creditors, and direct or indirect recipients or purchasers of any of Defendant's assets, and all persons acting by, through, under, or in concert with any of them, including the secured lenders of the Defendant (and their respective directors, officers, employees, subsidiaries, affiliates and agents)." (*Id.* at § 1.30.)

Further, the Settlement Agreement provides that within ten (10) days of this Court's entry of Preliminary Approval Order, Defendant will provide the Claims Administrator with a contact list for the Class Members. (ECF No. 133 at 10; 133-1 at § 2.6.) The Claims Administrator will then mail, email, and text, if applicable, the notice to all Class Members within fifteen (15) days of receiving the contact list from Defendant. (*Id.* at 10-11; 133-1 at § 2.6.)

### *Allocation of Settlement Fund and Fees*

The Individual Settlement Allocations will be paid from the Net Settlement Amount to Class Members by check.  (ECF No. 133-1 at Exhibit A, 2.) The distribution will be as follows:

- Class Members who worked for Defendant at any time from May 16, 2017 to October 25, 2023 will be included. (*Id.*)
- The amount will be determined by the following formula: "(i) compute the total number of weeks worked by Participating Class Members throughout the Liability Period ("Workweeks"); (ii) divide the Net Settlement Fund by the Workweeks to determine the weekly allocation of the Net Settlement Fund (the "Weekly Allocation"); (iii) for each Participating Class Member, multiply the Weekly Allocation by the total number of weeks, including partial weeks rounded to the nearest tenth place, worked by that Participating Class Member during the Liability Period to compute each Participating Class Member's Individual Settlement Share of the Net Settlement Fund." (*Id.*)

- For Class Members that worked "for at least one day but less than one week during the Liability Period shall be credited with one full Workweek for purposes of these calculations." (*Id.*)

Once approved by the Court, the Class Members would have three hundred sixty-five (365) days after mailing to cash the Settlement Check. (*Id.*) In the event that a check was not received, the Member must request a replacement within one hundred eighty-five days of the original Settlement. (*Id.*)

In addition, Class Counsel will request fees in the amount of 33.33% of the Settlement Amount, which would be roughly $500,000.00, inclusive of litigation expenses and costs. (ECF No. 133 at 11.) Class Administrator has quoted $38,000.00 for administration fees and costs. (*Id.*) These amounts will be paid from the Settlement Amount, which has been deposited as of

November 6, 2024, when Defendant confirmed the transfer of the $1,500,000 to Class Administrator following the Article 9 Foreclosure.  (*Id.* at ¶ 48.)

## DISCUSSION

### A.  Conditional Class Certification

"Before certifying a class, a district court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation."  *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997).  Additionally, where, as here, a plaintiff moves to certify the class pursuant to Rule 23(b)(3), plaintiff is also required to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016) (quoting Fed. R. Civ. P. 23(b)(3)).  This is satisfied if the resolution of the legal and factual questions of each class member's case can be achieved through generalized proof, and those issues are more substantial than the issues which are subject to individualized proof.  *Id.*

The requirements for Rule 23 class certification must be established by a preponderance of the evidence and are subject to a rigorous analysis.  *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *5 (E.D.N.Y. Apr. 2, 2012).  Any factual disputes relevant to the Rule 23 requirements must be resolved and any doubts should be resolved in favor of certification.  *Spencer v. No Parking Today, Inc.*, No. 12 CIV. 6323 ALC AJP, 2013 WL 1040052, at *10 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, No. 12 CIV. 6323 ALC AJP, 2013 WL 2473039 (S.D.N.Y. June 7, 2013).  "Courts have substantial discretion in determining whether to certify a class."  *Id.*  "[W]here a collective action under the

FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006). For purposes of settlement, Defendant does not oppose conditional certification.

### i.    *Rule 23(a)(1): Numerosity*

Plaintiff contends the numerosity requirement is satisfied here because there are approximately 1,156 non-managerial employees who were employed with Defendant during the period of time that the Complaint alleges. (ECF No. 132 at 9.)

The proposed settlement class may be certified where it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A proposed class of more than 40 members presumptively satisfies the numerosity requirement." *Avila v. Ardian Corp.*, No. 18-CV-4795-FB-TAM, 2022 WL 3370024, at *2 (E.D.N.Y. Aug. 16, 2022) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Despite having different job titles, duties, or hours, employees who are subject to the same allegedly unlawful practices may be considered part of the settlement class. *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2022 WL 900603, at *5 (E.D.N.Y. Mar. 28, 2022).

The proposed class is sufficiently numerous. Plaintiff's Counsel affirms that Defendant provided a list of employees who worked during the time alleged and mailed notices to these employees. (ECF No. 133 at 17.) As a result of the mailings, ninety-seven (97) employees opted into this action. (*Id.* at 20.) Approximately sixty-two (62) of those individuals were interviewed by Counsel to gather information and later, twenty (20) representatives were chosen to help in the settlement discussions. (*Id.* at 22.) After reviewing the 4,000 or so payroll documents, violations were unfolded. (*Id.* at 25-27.)

Here, because the proposed class exceeds the 40-member threshold, the numerosity requirement is satisfied. *See Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-885 (FB) (SMG), 2020 WL 8642081, at *3 (E.D.N.Y. Oct. 8, 2020), *report and recommendation adopted*, No. 18-CV-885 (FB) (LB), 2021 WL 722412 (E.D.N.Y. Feb. 24, 2021).[5]

### ii.    *Rule 23(a)(2) and (3): Commonality/Typicality*

Plaintiff further contends that commonality and typicality are met because Plaintiff and the Class Members were all non-managerial employees at Defendant's Ronkonkoma facility. (ECF No. 132 at 10.) Likewise, their claims arise from the very same alleged policies and practices that resulted in Defendant not paying overtime, make timely payments, and failing to provide wage notices and statements. (*Id.*)

"The commonality and typicality requirements tend to merge into a single inquiry." *Avila*, 2022 WL 3370024 at *3 (quotes omitted); *Marisol*, 126 F.3d at 376 ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)"). Rule 23(a)(2) requires a plaintiff to show "questions of law or fact common to the class" and Rule 23(a)(3) requires that plaintiff's claims "are typical of the claims. . . of the class." (*Avila*, 2022 WL 3370024 at *3; Fed. R. Civ. P. 23(a)(2)-(3).) This can be "easily satisfied" by a single common issue. (*Avila*, 2022 WL 3370024 at *3; *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 PKCST, 2022 WL 900603, at *6 (E.D.N.Y. Mar. 28, 2022) ("Even a single common question will suffice") (quotes omitted).

---

[5] While it is true that a finding of numerosity is supported where potential class members have limited financial means or may fear retaliation by their employer (*see Spencer*, 2013 WL 1040052 at *13), Plaintiff has made no proffer of evidence that the proposed class here is of limited financial means or fears retaliation. The outcome should not change here, however, where Plaintiff has otherwise sufficiently established numerosity.

Critically, a plaintiff must demonstrate the proposed class has suffered the same injury. *Avila*, 2022 WL 3370024 at *3. s

Here, the factual and legal theories underlying Plaintiff's claims are the same as those of the proposed class.  At a minimum, there is at least one common issue to all class members: the failure in unpaid overtime hours.  *See e.g.*, *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011) ("[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification").  The overtime claims alleged by Plaintiff arise from the same course of events as the proposed class, namely Defendants' allegedly unlawful underpayment of wages. As Plaintiff states the Class Members "enjoy the same statutory rights under the NYLL to be paid at the overtime rate for all hours worked over forty in a workweek … [they] have sustained similar types of damages as a result of Defendant's failure to comply with the NYLL, [and] … have all been injured in that they have been under-compensated due to Defendant's common policies, practices, and patterns of conduct." (ECF No. 1 at ¶¶ 47-48.) Therefore, the commonality and typicality requirements are satisfied.

### iii.     *Rule 23(a)(4): Adequacy of Representation*

Plaintiff argues the adequacy requirement is satisfied because Plaintiff's interest is clearly aligned with the interests of the proposed class as they share the same claims and injuries. (ECF No. 132 at 10.) Moreover, Plaintiff has actively participated and assisted Counsel in this on-going litigation. (*Id.*)

"Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are

qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quotes omitted).

Here, there is no indication that Plaintiff has interests that are antagonistic to or at odds with those of the proposed Class Members.  Rather, Plaintiff seeks the same relief as all other Class Members—payment for overtime wages due and owing and related damages provided for in the FLSA and NYLL.

Further, Plaintiff's Counsel has sufficient experience and is well qualified.  Attorneys Louis Pechman, Galen C. Baynes, and Camille A. Sanchez of PLG—who seek to be appointed as Class Counsel—have handled at least 300 wage-and-hour cases. (ECF No. 133 at ¶ 63.) Mr. Pechman specifically has been recognized for his extensive experience in this area and has been appointed as class counsel in several cases. (*Id.*) Accordingly, the requirement of adequate of representation is satisfied.

### iv.  Predominance and Superiority

Having satisfied the four requirements set out in Rule 23(a), Plaintiff must also demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" under Rule 23(b)(3).  Fed. R. Civ. P. 23(b)(3); *see Avila*, No. 18-CV-4795-FB-TAM, 2022 WL 3370024, at *4 (E.D.N.Y. 2022).

### a.  Predominance

Plaintiff asserts that the common issue of Defendant's maintenance of a policy and practice of failing to pay overtime wages to Plaintiff and the Class Members predominates over any varying factual or legal theories among the Class Members. (ECF No. 132 at 12.)

Generally, the predominance requirement is satisfied where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Buchanan*, 2020 WL 8642081 at *4 (quotes omitted). The focus is on whether there are questions of liability common to the class members. *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442, 2012 WL 170049, at *12 (E.D.N.Y. 2012). Wage claims are especially suited for class litigation. *Id.* at *13. As such, individual defenses or differing damages will generally not defeat predominance. *See Jankowski*, 2006 WL 118973 at *4.

Here, the common question of Defendant's alleged failure to pay overtime wages predominates over any varying factual or legal theories that may exist among the Class Members. Therefore, the predominance requirement is satisfied. *See Jankowski*, No. 01-CV-0164 (SJF) (KAM), 2006 WL 118973 at *4; *see also Lewis*, 2012 WL 170049 at *14 (finding predominance satisfied because "the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees").

### b. Superiority

Plaintiff argues that it is unlikely that the Class Members will bring their own action because the potential recovery will be considerably less than here. (ECF No. 132 at 13.) For example, many Class Members worked shorter periods. (*Id.*) Thus, the class action is more economically feasible versus the cost of litigation for each individual. (*Id.*)

"The superiority requirement is satisfied where a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Buchanan*,

2020 WL 8642081 at *4 (quotes omitted).  Rule 23(b)(3) sets forth four non-exhaustive factors relevant to the superiority inquiry: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).  A class action is superior where they "facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery."  *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 CIV. 2541 KNF, 2014 WL 1378922, at *6 (S.D.N.Y. 2014).

Here, a class action is superior to any other available method for fairly and efficiently adjudicating this controversy. First, given the expense of litigation and the size of numerous individual claims proceeding as a class action here is "more economically sensible." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 177 (S.D.N.Y. 2014).  Second, Plaintiff points out that there are no other pending lawsuits against Defendant by individual Members. Third, because the alleged wrongful conduct occurred within this District (*see* ECF No. 1 at ¶ 4), and the Class Members are all located within New York (ECF No. 132 at 13), holding the action in this Court is appropriate. Fourth, as Plaintiff contends, proceeding as a class is superior to any other method to ensure efficient and fairness. (*Id.* at 12.)

Accordingly, Rule 23 is satisfied, and the Class is deemed certified.

**B.  Conditional Approval of Collective Action**

Section 216(b) of the FLSA provides, in relevant part:

   An action to recover ... liability ... may be maintained against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such

action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

"While FLSA does not prescribe any procedures for approval of actions brought collectively by those who are 'similarly situated,' courts have long construed § 216(b) to grant district court authority to order that notice be given to potential plaintiffs informing them of the option to join the suit." *Id.*

Approval of a collective action is a two-step process. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* All that is needed is a modest factual showing that plaintiffs and potential opt-in plaintiffs were victims of a common policy that violated the law. *Id.* "If plaintiffs meet this 'fairly lenient standard,' conditional certification is typically granted and notice to potential plaintiffs authorized." *Poplawski*, 2012 WL 1107711 at *4. The second step occurs later, on a more complete record. *Myers*, 624 F.3d at 555. Plaintiffs must show that the plaintiffs who opted in are actually similarly situated to the named plaintiffs. *Id.*

Here, Plaintiff alleges on behalf of herself and the FLSA Collective that they were deprived of overtime wages due to Defendant's "common unlawful pay policies and practices." (ECF No. 1 at ¶ 35.) Plaintiff continues by stating that this repetitive behavior caused injuries and damages to the Collective and to Plaintiff. (*Id.* at ¶ 36.) This unlawful practice was due to Defendant's corporate policies. (*Id.* at ¶ 37.) Applying the "fairly lenient standard," the Court finds that Plaintiff has met her *de minimis* burden of showing Plaintiff and the Class Members are similarly situated.

Therefore, the conditional approval of the collective action is granted. *See Ortiz*, 2014 WL 1378922 at *10.

## C. Preliminary Approval of the Class Settlement

Preliminary approval is the first step in the settlement of a class action. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014). If approved, plaintiffs go on to provide notice of a hearing where class members and settling parties are provided an opportunity to be heard concerning final court approval. *Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791, 798 (S.D.N.Y. 2020).

At this preliminary stage, the court is only tasked with evaluating the settlement for fairness, adequacy, and reasonableness, and to ensures the agreement is not a product of collusion. *Lora v. To-Rise, LLC*, 452 F. Supp. 3d 5, 7 (E.D.N.Y. 2019). "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id.* (quoting *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir.1980)).

Rule 23(e)(2), as amended in 2018, provides certain factors for the court to consider upon preliminary approval. Specifically, whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment;
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Prior to the 2018 amendment, Rule 23(e)(2) the Second Circuit examined "the fairness, adequacy, and reasonableness of a class settlement according to the 'Grinnell factors.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  The *Grinnell* factors include:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*[6]  The "Rule 23(e)(2) factors [] add to, rather than displace, the *Grinnell* factors.  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).  Indeed, there is significant overlap between the two sets of factors.  *Id.*  Both sets of factors are considered below.

### i.    *Adequate Representation by Class Representative and Class Counsel*

As set forth in Section A.iii, *supra*, Plaintiff and the proposed Class Counsel are adequate representation for the Class.  Here, Plaintiff's interest is adequately aligned with the Class

---

[6]  Typically, parties cannot privately settle FLSA claims absent the approval of the court under the fair and reasonable standard set forth in *Cheeks v. Freeport Pancake House, Inc.  See* 796 F.3d 199 (2d Cir. 2015.)  Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Ramos v. Nikodemo Operating Corp.*, No. 16-CV-1052 (KAM)(JO), 2017 WL 11508016, at *5 (E.D.N.Y. 2017) (quotes omitted). Therefore, the Court need not incorporate a review under *Cheeks* here.

Members and Plaintiff's counsel, PLG, are sufficiently experienced and qualified to represent the class. *Id.* This factor therefore weighs in favor of granting preliminary approval. *See Buchanan*, 2020 WL 8642081 at *6.

### ii. *Arms-Length Negotiations After Meaningful Discovery*

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116. This factor addresses the same substance as *Grinnell* Factor 3 (the stage of the proceedings and the amount of discovery completed).

Here, the parties negotiated at arms-length. The Parties were engaged in extensive discovery, including but not limited to, the review of approximately 4,000 documents representing twenty Class Members' payroll records. (ECF No. 132 at 14.) Plaintiff's Counsel used this information to prepare for mediation and with the help of the Mediator, the parties were able to have substantial negotiations leading to the settlement in principle. (*Id.* at 15.) Plaintiff avers that the settlement only occurred after the meaningful discovery and arms-length negotiations. (*Id.*) This factor weighs in favor of approval. *See Buchanan*, 2020 WL 8642081 at *6-7.

### iii. *Adequate Relief for the Class*

The Court is required to consider whether the settlement provides adequate relief to the putative class. *See* Fed. R. Civ. P. 23(3)(2)(C). This includes a consideration of "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class ...; (iii) the terms of any proposed award of attorney's fees ...; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.*

### a. *Costs, Risks, and Delay of Trial and Appeal*

This Rule 23(e)(2) factor "subsumes several *Grinnell* factors," including the complexity,

expense and likely duration of litigation (*Grinnell* Factor 1), risks of establishing liability

(*Grinnell* Factor 4), the risks of establishing damages (*Grinnell* Factor 5), and the risks of

maintaining the class through trial (*Grinnell* Factor 6). *See Mikhlin v. Oasmia Pharm. AB*, No.

19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. 2021) (quoting *In re Payment*

*Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36.) "Class action suits

have a well-deserved reputation as being most complex." *Rosenfeld v. Lenich*, No. 18-CV-6720

(NGG) (PK), 2021 WL 508339, at *5 (E.D.N.Y. 2021). This case is no exception.

Here, it is quite clear that even with the discovery completed to date, if this case

proceeds, it would result in additional expense and delay. (ECF No. 132 at 15.) Importantly,

Defendant is no longer an "operational corporate entity" following the Foreclosure transaction.

(*Id.*) Plaintiff contends that absent the mediation efforts and Foreclosure transaction, both

Plaintiff and the Class would likely have seen little to no relief. (*Id.* at 16.) More to that point, if

settlement is not approved, this would be quite a lonely road as Plaintiff would not be able to go

after Defendant, a non-operational entity. (*Id.*) (ECF No. 132 at 15.)

Additionally, Defendant denied all the allegations made by Plaintiff in its Answer. (*See*

ECF No. 11.) If the parties were to go to trial, there would be substantial disputes of damages,

and this would pose a high risk for the Class. (ECF No. 132 at 16.) As would the costs of

continuing this action. (*Id.* at 15.) Given the above-mentioned risks, costs, and delay of trial and

possible appeal would be significant, the undersigned finds this factor to weigh in favor of

preliminary approval. *See Rosenfeld*, 2021 WL 508339 at *5.

### b.   Effectiveness of the Proposed Method of Distributing Relief to the Class

An adequate distribution method is one that can "deter or defeat unjustified claims" without imposing an undue demand on class members.  *Id.* (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).  The method does not need to be perfect, it just needs to have a reasonable, rational basis, especially when recommended by experienced counsel.  *Id.*

Here, Arden Claims Service LLC as the Class Administrator, will be distributing the notices and settlements. (ECF No. 132 at 17.) As such, Arden Claims Service LLC will be taking appropriate measures to ensure mailing is proper by locating correct addresses if need be. (*Id.*) In any event, Class Members have a year to claim and endorse their checks following mailing. (*Id.* at 18.) Thus, the undersigned finds this factor to weigh in favor of preliminary approval.

### c.   Terms of Any Proposed Attorneys' Fees

Although no formal application has been made for fees, PLG states they will seek an award of 33.3%, which would be no larger than $500,000, representing a third of the Settlement Amount. (*Id.*) This award would include all expenses and costs that PLG incurred throughout this action. (*Id.*)

"[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 445. "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Rosenfeld*, 2021 WL 508339 at *6 (quotes omitted) (collecting cases); *Cohan v. Columbia Sussex Mgmt., LLC*, No. CV 12-3203 (AKT), 2018 WL 4861391, at *2 (E.D.N.Y. 2018); *Azogue v. 16 for 8 Hosp. LLC*, No. 13-CV-7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 WL 5492998, at *26 (S.D.N.Y. 2013).

Here, counsel's proposed request for attorneys' fees totaling one-third of the Settlement Amount is well within the range of reasonableness. *Buchanan*, 2020 WL 8642081 at *8. Therefore, the undersigned finds this factor weighs in favor of approval.[7]

### d. Any Agreement Required to be Identified under Rule 23(e)(3)

This factor requires the Court to consider any agreements made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(3).

According to the Settlement Agreement, Class Administrator will take $38,000.00 from the Settlement Amount for its services. Plaintiff states "Arden Claims Service LLC is an experienced settlement administrator fully capable of performing the claims administration duties … [and] has been appointed to administer class settlements by numerous courts." (ECF No. 132 at 20.) This amount seems reasonable given the ratio of fees awarded in comparison to the total settlement fund and the number of Class Members here. *See e.g., Mariani v. OTG Mgmt., Inc.*, No. 16 CV 01751 (CLP), 2018 WL 10468036, at *11 (E.D.N.Y. Sept. 28, 2018) (granting an award of $25,000 within a $300,000 settlement fund); *Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-CV-6242 (ENV)(MMH), 2025 WL 968586, at *17 (E.D.N.Y. Mar. 31, 2025) (granting an award of $9,000 within a $775,000 settlement fund); *Flores v. CGI Inc.*, No.

---

[7] While Rule 23(e)(2)(c) does not specifically provide for the court to consider the terms of any proposed service and release awards to a plaintiff, courts in this district have looked at these issues on preliminary approval. *See e.g.*, *Buchanan*, 2020 WL 8642081 at *8. Determining whether a plaintiff should be granted an additional service or incentive award is within the court's discretion and is meant to compensate a plaintiff for any personal risk incurred by her efforts. *Id.* Courts have found that based on the responsibility and personal risk taken by a plaintiff in an action such as this, service awards in the amount of $10,000 and release payments in the amount of $20,000—like the ones Plaintiff seeks here of $20,000—are reasonable. *See Henry v. Little Mint, Inc.*, No. 12 CIV. 3996 CM, 2014 WL 2199427, at *4 (S.D.N.Y. 2014) (awarding service payment of $10,000); *Chang*, 2019 WL 8105999 at *10 (finding release payment of $20,000 reasonable).

22-CV-350 (KHP), 2022 WL 13804077, at *11 (S.D.N.Y. Oct. 21, 2022) (granting a $25,000 award within a $435,000 settlement fund).

As it relates to the Settlement Agreement's release provisions, "[a] settlement cannot be fair, reasonable and adequate if the Class-wide release is overbroad." *Oladapo v. Smart One Energy, LLC*, No. 14-CV-7117 (LTS) (BCM), 2017 WL 5956907, at *14 (S.D.N.Y. 2017), *report and recommendation adopted*, No. 14 CV 7117 (LTS) (BCM), 2017 WL 5956770 (S.D.N.Y. 2017).[8] Here, the Settlement Agreement provides that each Class Member agrees to release the Releasees from any and all wage and hour claims under the FLSA and NYLL that could have been brought in this action from the period of May 16, 2020 to the date of the final Court approval Order. (ECF 133-1 at § 4.1.) However, the Members do not release their FLSA until the settlement check is endorsed. (*Id.* at Exhibit A, 3.) Settlement agreements with nearly identical release language are often granted approval. *See e.g.*, Flores, 2022 WL 13804077 at *2 (S.D.N.Y. 2022); *Solis v. OrthoNet LLC*, No. 19-CV-4678 (VSB), 2021 WL 1904984, at *4 (S.D.N.Y. 2021). Accordingly, the Court finds this factor weighs in favor of approval.

### iv. *Equitable Treatment of Class members Relative to One Another*

This factor calls the Court to consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In other words, "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different

---

[8] In non-class FLSA settlements, a settlement agreement's release provisions are of top concern. In *Cheeks*, the Court "specifically cited to overbroad releases that would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues' as highlighting the 'potential for abuse' in FLSA settlements." *Torres v. Mc Gowan Builders*, No. 18 CV 6099 (RML), 2020 WL 5369056, at *3 (E.D.N.Y. 2020) (citing *Cheeks*, 796 F.3d at 206). Accordingly, Courts in this circuit have routinely rejected FLSA settlement agreements containing such general releases. *Id.*

ways that bear on the apportionment of relief." 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

Plaintiff provides a formula that calculates what the individual Class Member will receive. (ECF No. 133-1 at Exhibit A, 2.) Specifically, the formula will

> (i) compute the total number of weeks worked by Participating Class Members throughout the Liability Period ("Workweeks"); (ii) divide the Net Settlement Fund by the Workweeks to determine the weekly allocation of the Net Settlement Fund (the "Weekly Allocation"); (iii) for each Participating Class Member, multiply the Weekly Allocation by the total number of weeks, including partial weeks rounded to the nearest tenth place, worked by that Participating Class Member during the Liability Period to compute each Participating Class Member's Individual Settlement Share of the Net Settlement Fund.

(*Id.*) In addition, for individuals that worked "for at least one day but less than one week during the Liability Period shall be credited with one full Workweek for purposes of these calculations." (*Id.*) Settlement agreements, like this one, which provides class member awards derived by calculating each class member's share have been found to be an equitable distribution scheme. *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20 CV 456 (RPK)(LB), 2021 WL 7906584, at *9 (E.D.N.Y. 2021). This factor weighs in favor of approval.

### v. *Ability of Defendants to Withstand Greater Judgment*

This is *Grinnell* Factor 7, which "does not fit neatly within any of the factors enumerated in Rule 23(e)(2)(C) but adds value to the Court's analysis." *Id.* The idea underlying this factor is that if a defendant could not withstand a judgment greater than the amount provided for in the settlement, the settlement is more likely to be reasonable, fair, and adequate. *Flores*, 2022 WL 13804077 at *8.

Here, Plaintiff contends that due to the Foreclosure transaction, Defendant is dissolving and thus, recovery absent this Court's approval is slim to none. (ECF No. 132 at 19.) Plaintiff attaches Defendant's Foreclosure Notice to its creditors and interest parties as Exhibit 2 to Mr.

Pechman's Affidavit. (ECF No. 133-2.) With this, the Court is able to determine that Defendant would not be able to "withstand a judgment greater than" the $1,500,000 settlement amount here. *Flores*, 2022 WL 13804077 at *8.

### vi. *Reaction of the Class*

At the preliminary approval stage, *Grinnell* Factor 2 is limited at best. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 29. Where, as here, Class Members have not received notice of the settlement, Courts have found it too early to evaluate this *Grinnell* factor. *See Rosenfeld*, 2021 WL 508339 at n. 2 ("One of the *Grinnell* factors, the class's reaction to the proposed settlement, cannot be considered until after notice has been provided to the class. Accordingly, the court does not consider that factor at this stage of the proceedings"); *Chang v. Philips Bryant Park LLC*, No. 17 CIV. 8816 (LTS) (SLC), 2019 WL 8105999, at *8 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted*, No. 17-CV-8816 (LTS)(SLC), 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020) ("Because the Class Members have not yet received notice of the settlement, it remains too early to evaluate the second Grinnell factor"). If preliminary approval is granted, this factor should be analyzed upon sufficient evidence presented by the parties at final approval. *See Chang*, 2019 WL 8105999 at *8.

### vii. *Reasonableness of the Settlement*

*Grinnell* Factors 8 and 9 requires the Court to consider the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. These two factors are often combined for the purposes of analysis. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47–48.

Determining whether a settlement amount is reasonable does not necessarily involve "a mathematical equation yielding a particularized sum." *Henry*, 2014 WL 2199427 at *10 (quotes omitted). Rather, it considers a range of reasonableness which recognizes the uncertainties of law and fact and the accompanying costs of litigation. *Id.* For instance, a settlement which allows Class Members to be immediately paid is reasonable even if it means sacrificing a hypothetically larger amount if the matter were to proceed. *Id.*

Here, the Settlement Fund is $1,500,000. Plaintiff's Counsel submits this is given the Defendant's current financial status and risk of on-going litigation, this settlement is reasonable. (ECF No. 132 at 15-16.) As previously noted, each Class Member will receive payment proportional to the duration of their employment; those who worked for longer periods will receive greater payments than those who worked for shorter periods. Further, once the settlement is granted final approval, and fees and costs have been deducted from the gross Settlement Amount, Class Members will receive their checks through the Class Administrator's diligent process. (*Id.* at 17.) This is undoubtedly sooner than if each Class Member waited to receive payment after trial, assuming they were successful. This settlement amount reflects a balance of the strength of the Class Members' claims versus the risk of trial and thus appears to fall within the "range of reasonableness" set out in the eighth and ninth *Grinnell* factors. *See Henry*, 2014 WL 2199427 at *10.

In light of the foregoing, the undersigned grants preliminary approval of the proposed Settlement Agreement.

**D. <u>Appointment of Class Counsel</u>**

Plaintiff proposes that her Counsel, PLG, be appointed as Class Counsel. (ECF No. 132 at 11.)

If the Court conditionally certifies the proposed Class, Rule 23(c)(1)(B) requires the appointment of class counsel under Rule 23(g). *See* Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g) provides four factors for the Court to consider in evaluating the adequacy and appointing class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(A)(i)–(iv).

*First*, PLG has spent substantial time on Plaintiff's action since its commencement, including but not limited to, conducting an investigation of the claims, discovery and negotiating the settlement. (ECF Nos. 132 at 11.) *Second*, PLG has substantial experience with both FLSA and NYLL claims, and Mr. Pechman has personally handled over 300 of these cases. (*Id.*; ECF No. 133 at ¶ 63.) *Third*, it is evident from PLG's experience and prior caseload, Counsel is very knowledgeable in this area. (ECF No 132 at 11.) Moreover, Mr. Pechman teaches a course on this very subject, titled "Wage Theft: Employee Rights and Employer Responsibilities." (ECF No. 133 at ¶ 64.) *Fourth*, PLG has previously been appointed as class counsel for other cases and will thus understand the level of resources required for a class action. (ECF No 132 at 11.) More to that point, Class Administrator will be taking the proper steps to ensure the Class receives their Settlement Checks. (*Id.* at 17.)

Accordingly, PLG meets the criteria of Rule 23(g), and is to be appointed as Class Counsel.

**E.  The Proposed Notice of Settlement**

Plaintiff seeks approval of the Proposed Notice.  (ECF No. 132 at 1.) Where, as here,

parties are both seeking to certify a settlement class and settle a class action, both the

requirements of Rule 23(c) (notice for class certification) and Rule 23(e) (notice for settlement or

dismissal) must be met.  *Chang*, 2019 WL 8105999 at *13.

Pursuant to Rule 23(e), the Court is to "direct notice in a reasonable manner to all class

members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Upon ordering

notice pursuant to Rule 23(e)(1), Rule 23(c)(2)(B), requires that "the court must direct [that]

class members [be provided with] the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort."

Fed. R. Civ. P. 23(c)(2)(B).  This may be by mail, electronic, or other appropriate means.  *Id.*

Class Notice must include:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the
        member so desires;
(v)     that the court will exclude from the class any member who requests
        exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)–(iv).

Here, Defendant is to provide the Claims Administrator with a contact list for the Class

Members within ten (10) days of this Court's entry of Preliminary Approval Order. (ECF No.

133 at 10; 133-1 at § 2.6.) Following that, the Claims Administrator will then mail, email, and

text, if applicable, the notice to all Class Members within fifteen (15) days of receiving the

contact list from Defendant. (*Id.* at 10-11; 133-1 at § 2.6.) In the event that a notice is returned,

Claims Administrator is tasked with taking reasonable steps to obtain the correct address. (ECF No. 132 at 17.) In addition, Class Members are afforded a substantial amount of time to endorse their checks. (*Id.* at 18.) These notices will also be mailed in both English and Spanish. (*Id.* at 20.) Further, each of the enumerated criteria set out by Rule 23(c) above are found in Plaintiff's Proposed Notice. Accordingly, the proposed Notice and its plan of distribution is approved.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Motion for Preliminary Approval is **GRANTED**. It is hereby **ORDERED** that:

A. The Court finds on a preliminary basis that the settlement memorialized in the Agreement and filed with the Court falls within the range of reasonableness and meets the requirements for preliminary class settlement approval;

B. The Court conditionally certifies, for settlement purposes only, the following Federal Rule of Civil Procedure 23 Class ("Class") described in the Agreement: Plaintiff, Opt-In Plaintiffs and all non-managerial employees who worked for Spirit Pharmaceuticals LLC at any time between May 16, 2017, and October 25, 2023;

C. The Court finds, on a preliminary basis for settlement purposes only, that the requirements of Federal Rule of Civil Procedure 23 are satisfied;

D. The Court appoints Plaintiff, for settlement purposes only, as a Class Representative;

E. The Court appoints Pechman Law Group PLLC, for settlement purposes only, as Class Counsel;

F. The Court appoints Arden Claims Service LLC, for settlement purposes only, as Claims Administrator to carry out the duties and procedures set forth in the Agreement;

G.  The Court approves the proposed Notice, attached as Exhibit A to the Settlement

    Agreement, for distribution to Class Members;

H.  The Court orders the Settlement Administrator to disseminate the Notice to the Class

    Members as provided in the Agreement;

I.  The deadline for Class Members to opt-out of the Settlement or to make objections to the

    Settlement shall be sixty (60) days from the dissemination of the Notice to Class

    Members by the Claims Administrator;

J.  The Court will conduct an in-person Final Approval Hearing on **June 26, 2025 at 11:30**

    **AM** in the Central Islip Courthouse, Courtroom 1020, to determine the overall fairness of

    the settlement, attorneys' fees and costs to Class Counsel, service award to the Class

    Representative, and fees and costs to the Claims Administrator;

K.  The Final Approval Hearing may be continued without further notice to Class Members.

    Class Counsel shall file a motion for final approval of the settlement as set forth in the

    Agreement on or before **September 2, 2025**.

Dated:  Central Islip, New York
        May 28, 2025

                                       S O   O R D E R E D :

                                       /s/ *James M. Wicks*
                                       JAMES M. WICKS
                                       United States Magistrate Judge

28