FILED
CLERK

9/19/2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LORENA ABARZA RIOS, *on behalf of herself and*
*all others similarly situated,*
                                            *Plaintiff,*


                        -against-

SPIRIT PHARMACEUTICALS LLC,

                        *Defendant.*
-------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
23-CV-03637 (JMW)

**A P P E A R A N C E S :**

    Louis Pechman
    Galen C. Baynes
    Camille A. Sanchez
    **Pechman Law Group PLLC**
    488 Madison Ave, Suite 1704
    New York, NY 10022
    *Attorneys for Plaintiff, the Putative Rule 23 Class,*
    *and the Conditional FLSA Collective*

    Douglas E. Rowe
    **Certilman Balin Adler & Hyman, LLP**
    90 Merrick Avenue
    East Meadow, NY 11554
    *Attorney for Defendant*

**WICKS,** Magistrate Judge:

On May 16, 2023, Plaintiff Lorena Abarza Rios ("Plaintiff" or "Abarza"), on behalf of

herself and others (the "Class Members"), commenced this wage and hour class and collective

action against Defendant Spirit Pharmaceuticals LLC ("Defendant" or "Spirit Pharmaceuticals")

asserting claims pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA")

and the New York Labor Law § 190, *et seq.* ("NYLL"), and the NYLL's Wage Theft Prevention

Act, NYLL §§ 195, 198 ("WTPA"). [1] (*See generally*, ECF No. 1.) This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this matter arises under federal question, through the FLSA claims and supplemental jurisdiction over the remaining NYLL claims pursuant to 28 U.S.C. § 1367.

Plaintiff and Class Members[2] were employees of Spirit Pharmaceuticals, a manufacturer and distributor of over-the-counter drugs, who allegedly worked up to seventy-nine hours per week without overtime pay along with other violations. (*Id.* at ¶ 1.) Following mediation efforts, the parties informed the Court that they reached a settlement in principle on a class-wide basis and filed a Motion for Preliminary Approval of Class Settlement (ECF No. 131). The Court granted preliminarily approval on May 28, 2025 (ECF No. 135). A Fairness Hearing[3] was held on September 19, 2025, and no objections to the Settlement were heard or filed. (*See* Electronic Order dated 9/19/2025.)

Now before the Court is Plaintiff's Motion for Final Approval of Class and Collective Action Settlement (ECF No. 138), which is unopposed.  For the reasons stated on the record at the Fairness Hearing and those set forth below, Plaintiff's Motion is **GRANTED**.[4]

---

[1] The specific claims alleged are: (i) Unpaid Minimum Wages under NYLL; (ii) Unpaid Overtime Wages under FLSA; (iii) Unpaid Overtime Wages under NYLL; (iv) Spread-of-Hours Pay under NYLL; (v) Failure to Provide Wage Notices under WTPA; (vi) Failure to Provide Wage Statements under WTPA; and (vii) Frequency of Payments under NYLL.

[2] The Class Members are all individuals who held non-managerial positions at Defendant's Ronkonkoma, New York facility from May 16, 2017, through and including October 25, 2023. (*Id.* at ¶ 2; ECF No. 140-1 at § 1.7.)

[3] A Fairness Hearing is the final step prior to settlement approval, where the Court provides members with the opportunity to be heard and object, and ensures that the settlement is fair and reasonable. *See What's Market: Process of Settling Class Actions*, Practical Law Practice Note w-000-4398; *Settling Class Actions: Process and Procedure*, Practical Law Practice Note 3-541-8765.

[4] Familiarity with the procedural history and background of this action is assumed herein. The Court points the reader to ECF No. 135 for a full recitation of the factual and procedural histories.

## THE PROPOSED SETTLEMENT

### *Settlement Amount*

The total settlement amount is $1,500,000 ("Settlement Fund").  (ECF No. 140-1 at §

3.1.)  This amount covers: (i) Class Members' awards, (ii) Class Counsel, Pechman Law Group

PLLC ("PLG") attorneys' fees and costs (not to exceed a third of the award—$500,000), (iii)

Plaintiff's Service Award of $20,000, (iv) expenses of the Settlement Claims Administrator, and

(v) any applicable employer withholdings on Class Members' Individual Settlement Shares. (*Id.*)

The "Net Settlement Amount," is the gross Settlement Fund minus the amounts for

Settlement Claims Administrator's fees and costs, court approved attorneys' fees and costs for

Class Counsel, and court approved award for Plaintiff. (ECF No. 140-1 at § 3.4(A).)  The Class

Members will receive their Individual Settlement Allocations from the Net Settlement Amount

which will be correlated to the number of weeks worked.  (*Id.*; ECF No. 139 at 4.)

### *Class Member Release and Notice*

According to the Settlement Agreement, each Class Member agrees to release the

Releasees as defined in Section 1.30[5], from any and all wage and hour claims under the FLSA

and NYLL that could have been brought in this action from the period of May 16, 2020 (for

FLSA claims) and from the period of May 16, 2017 (for NYLL claims) to the date of the final

Court approval Order. (ECF No. 140-1 at § 4.1.) However, the Members do not release their

FLSA claims until the settlement check is endorsed. (*Id.* at Exhibit A, 3.)

---

[5] "'Releasees' means Defendant including, if different from Defendant, Designee, including each and all
of Defendant's and Designee's respective directors, officers, employees, subsidiaries, affiliates, agents,
assigns, representatives, parents, predecessors, successors, insurers, reinsurers, attorneys, benefit plans,
secured creditors, and direct or indirect recipients or purchasers of any of Defendant's assets, and all
persons acting by, through, under, or in concert with any of them, including the secured lenders of the
Defendant (and their respective directors, officers, employees, subsidiaries, affiliates and agents)." (*Id.* at
§ 1.30.)

Following the Court's preliminary settlement approval, the parties provided the Class Administrator, Arden Claims Service LLC ("Arden"), with the last known contact information for the 1,153 Class Members, and Notices in both English and Spanish. (ECF No. 139 at 5.) Thereafter, Arden disseminated the Notices to 1,150 Members for whom mailing addresses were available on June 25, 2025. (*Id.*) This notified the Members of the exclusion or objection date, nature of the action and Settlement terms including releases. (*Id.*) Arden also informed the parties, on a weekly basis, with administrative updates. (*Id.*) As of September 2, 2025, a total of 42 Notices were not deliverable, and there have been no objections or opt-outs.  (*Id.* at 6.)

### *Allocation of Settlement Fund and Fees*

Following final approval, Arden will continue to perform settlement administration duties, which include distributing Settlement Checks, tax documents and tracking the number of deposited checks. (*Id.*) The Individual Settlement Allocations will be paid from the Net Settlement Amount to Class Members by check.  (ECF No. 140-1 at Exhibit A, 2.) The distribution will be as follows:

- Class Members who worked for Defendant at any time from May 16, 2017 to October 25, 2023 will be included.

- The Net Settlement Fund shall be paid to Class Members according to the following formula: (i) compute the total number of weeks worked by Participating Class Members throughout the Liability Period ("Workweeks"); (ii) divide the Net Settlement Fund by the Workweeks to determine the weekly allocation of the Net Settlement Fund (the "Weekly Allocation"); (iii) for each Participating Class Member, multiply the Weekly Allocation by the total number of weeks, including partial weeks rounded to the nearest tenth place, worked by that Participating Class Member during the Liability Period to compute each Participating Class Member's Individual Settlement Share of the Net Settlement Fund.

- Any Participating Class Member who worked for Defendant for at least one day but less than one week during the Liability Period shall be credited with one full Workweek for purposes of these calculations.

Class Members have three hundred sixty-five (365) days to cash their checks and in the event the checks are lost or not received, a request for replacement is to be made within one hundred eighty-five (185) days of the date that the check was originally mailed. (*Id.* at 2-3.)

In addition, Class Counsel has requested fees in the amount of 33.33% of the Settlement Amount, which is $500,000.00, inclusive of litigation expenses and costs. (ECF No. 140 at 11.) Class Administrator has quoted $38,000.00 for administration fees and costs. (*Id.*) These amounts will be paid from the Settlement Amount, which has been deposited as of November 6, 2024, when Defendant confirmed the transfer of the $1,500,000 to Class Administrator following the Article 9 Foreclosure. (*Id.* at ¶ 48.)

## ANALYSIS

This Court previously found that Rule 23 was satisfied and certified the Class for settlement purposes. (*See* ECF No. 135 at 13.) Likewise, the conditional approval of the collective action was granted. (*Id.*) The basis for approval and certification remains the same at this stage. *See In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) ("The Court in its opinion and orders providing the basis for its preliminary approval of the five settlements has already explained in detail why the Rule 23 and Grinnell factors support approval of each of the settlements. The Court re-adopts that analysis here….") Rather, the focus now at this final stage is fairness, reasonableness, and whether the settlement is adequate. *See id.* ("Because these subsequent developments only further support the fairness, reasonableness, and adequacy of the settlements, the Court gives its final approval to all five settlements.") Thus, for settlement purposes only, the Class and Collective are certified.

**Approval of the Class Settlement**

> [T]o grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is fair, reasonable and adequate. Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement. Courts examine procedural and substantive fairness in light of the strong judicial policy favoring settlements of class action suits.

*Spagnuoli v. Louie's Seafood Rest., LLC*, No. 13-CV-4907 (JMA) (ARL), 2018 WL 7413304, at *3 (E.D.N.Y. Sept. 27, 2018) (citing Fed. R. Civ. P. 23(e)) (internal citations and quotations omitted).

Rule 23(e)(2) provides certain factors for the court to consider upon approval.

Specifically, whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment;
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Prior to the 2018 amendment, Rule 23(e)(2) the Second Circuit examined "the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Now, the four Rule 23(e)(2) factors are the "procedural considerations and substantive qualities that should always matter to the decision whether to approve [a settlement] proposal." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). These factors do not displace the "traditional" *Grinnell* factors. Therefore, the

Court must review the factors outlined in Rule 23(e)(2) in conjunction with the *Grinnell* factors. *Id.*; *see Ramon Hernandez, et al., v. Between the Bread 55ᵗʰ Inc., et. al.*, No. 17-CV-9541 (LJL), 2021 WL 12279220, at *2 (S.D.N.Y. Aug. 16, 2021) ("Additionally, courts in the Second Circuit consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), to determine whether the standards of Rule 23(e)(2) have been met.") The *Grinnell* factors include:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining the class action through the trial;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
>
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*[6]

The "Rule 23(e)(2) factors [] add to, rather than displace, the *Grinnell* factors. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y.

---

[6]  Typically, parties cannot privately settle FLSA claims absent the approval of the court under the fair and reasonable standard set forth in *Cheeks v. Freeport Pancake House, Inc.  See* 796 F.3d 199 (2d Cir. 2015.)  Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement."  *Ramos v. Nikodemo Operating Corp.*, No. 16-CV-1052 (KAM)(JO), 2017 WL 11508016, at *5 (E.D.N.Y. 2017) (quotes omitted). Therefore, the Court need not incorporate a review under *Cheeks* here.

2019).  Indeed, there is significant overlap between the two sets of factors.  *Id.*  Both sets of factors are considered below.

### i.    *Adequate Representation by Class Representative and Class Counsel*

As set forth in this Court's Preliminary Approval Order (ECF No. 135 at 11, 16–17), Plaintiff and the proposed Class Counsel remain adequate representation for the Class, as circumstances at this time are unchanged. Plaintiff's interest is adequately aligned with the Class members, as Plaintiff shares the same claims, and Plaintiff has played a large role in assisting PLG with this matter since its inception. (ECF No. 140 at 14-15.) Likewise, Plaintiff's counsel, PLG, are sufficiently experienced and qualified to represent the class. (*Id.* at 16-20.) PLG has spent expended numerous hours on this matter and has handled hundreds of similar cases. (*Id.*) This factor remains in favor of granting final approval.

Accordingly, the Court confirms the appointment of Plaintiff as Class Representative and PLG as Class Counsel for settlement purposes.

### ii.    *Arms-Length Negotiations After Meaningful Discovery*

At this final stage, "Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length." *Moses*, 79 F.4th at 243.  Rather, the Court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations."  *Marin v. 310 Bowery Grp. LLC*, No. 24-CV-1340 (SLC), 2025 WL 2267785, at *6 (S.D.N.Y. Aug. 8, 2025) (internal citations omitted). This factor addresses the same substance as *Grinnell* Factor 3 (the stage of the proceedings and the amount of discovery completed).

Here, the parties did negotiate at arms-length. The Parties were engaged in extensive discovery, including but not limited to, the review of approximately 4,000 documents

representing twenty Class Members' payroll records and the interviewing of approximately 62 Opt-in Plaintiffs. (ECF No. 139 at 8–9.) Plaintiff's Counsel used this information to prepare for mediation and with the assistance of Mediator Martin Scheinman[7], the parties were able to have substantial negotiations leading to the settlement in principle. (*Id.* at 2, 9.) Plaintiff avers that the settlement only occurred after the meaningful discovery and arms-length negotiations. (*Id.*) This factor weighs in favor of final approval. *See Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-885 (FB) (SMG), 2020 WL 8642081 at *6–7 (E.D.N.Y. Oct. 8, 2020).

### iii.    Adequate Relief for the Class

The Court is required to consider whether the settlement provides adequate relief to the putative class.  *See* Fed. R. Civ. P. 23(3)(2)(C).  This includes a consideration of "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class ...; (iii) the terms of any proposed award of attorney's fees ...; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* As set forth in this Court's Preliminary Approval Order (ECF No. 135 at 17–21), the above factors to be considered are evaluated in tandem with the applicable *Grinnell* factors.

#### a.    Costs, Risks, and Delay of Trial and Appeal

This Rule 23(e)(2) factor "subsumes several *Grinnell* factors," including the complexity, expense and likely duration of litigation (*Grinnell* Factor 1), risks of establishing liability (*Grinnell* Factor 4), the risks of establishing damages (*Grinnell* Factor 5), and the risks of maintaining the class through trial (*Grinnell* Factor 6).  *See Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. 2021) (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36.)  "Class action suits

---

[7] The Court recognizes and appreciates the good work and efforts of Mr. Scheinman in helping resolve the dispute.

have a well-deserved reputation as being most complex." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *5 (E.D.N.Y. 2021). This case is no exception.

Here, it is apparent that prolonging litigation would only generate additional cost and delay. (ECF No. 139 at 10–11.) Importantly, Defendant is no longer an "operational corporate entity" following the Foreclosure transaction. (*Id.* at 10.) Plaintiff maintains that absent the mediation efforts and Foreclosure transaction, neither Plaintiff nor the Class would have obtained recovery. (*Id.*) Furthermore, denial of settlement approval would leave Plaintiff with the impractical task of pursuing claims against a non-operational entity. (*Id.*) Irrespective of the dissolution of Defendant, Plaintiff points out that the recent legislative amendment to the NYLL § 191 eliminating the primary damages claim unless two conditions are met, strongly supports settlement approval.[8]

Additionally, Defendant denied all the allegations of the Complaint. (*See* ECF No. 11.) Proceeding to trial or protracted proceedings in this matter would result in substantial disputes over damages, thereby exposing the Class to significant risk and expenses. (ECF No. 139 at 10–11). Taking into account the risks, costs and delay of trial and possible appeal, the Court finds this factor to weigh heavily in favor of final settlement approval. *See Rosenfeld*, 2021 WL 508339 at *5.

### b. Effectiveness of the Proposed Method of Distributing Relief to the Class

An adequate distribution method is one that can "deter or defeat unjustified claims" without imposing an undue demand on class members. *Id.* (citing Fed. R. Civ. P. 23 advisory

---

[8] *See Garzon v. Bldg. Servs. Inc.*, No. 24-CV-5429 (JLR)(RFT), 2025 U.S. Dist. LEXIS 126441, at *41-44 (S.D.N.Y. July 2, 2025) ("The revised statute expressly provides for liquidated damages [only] where two conditions are met: (1) an untimely payment conduct occurred after the effective date of the amendment, May 9, 2025, and (2) the employer has, after the effective date, been subject to one or more final 'findings and orders' for violation of section 191(1)(a), where no administrative or judicial review is pending and the time to initiate such review has expired.").

committee's note to 2018 amendment).  The method "need not be perfect," but rather merely needs to have a reasonable, rational basis, especially when recommended by experienced counsel. *Id.* (quoting *In re EVCI Career Colleges Holding Corp. Sec. Litig.,* No. 05-cv-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007)); *see also In re WorldCom, Inc. Sec. Litig.,* 288 F. Supp. 3d 319, 244 (S.D.N.Y. 2005).

Here, Arden Claims Service LLC, as the Class Administrator, was provided with a list of available names and addresses of 1,153 Class Members—1,150 of which were mailed via First Class Mail on June 25, 2025. (ECF No. 140 at 12.) Arden maintains that advanced address searches were done for any undeliverable Notices, resulting in the re-mailing of eighty-three of the one hundred and eight that were returned. (ECF No. 140-3 at ¶ 7.) Indeed, at the Fairness Hearing, Plaintiff's counsel confirmed that skip tracing efforts were conducted for the undeliverable Notices. Arden is to disseminate Settlement Checks with required tax documents to Class members with equivalent diligence. (ECF No. 140 at 10, 14.) Once received, Class Members have an "Acceptance Period" of three hundred sixty-five days to cash their Settlement Checks following the date of mailing. (*Id.* at 12.) Therefore, the undersigned finds this factor to weigh in favor of approval.

### c.  Terms of Any Proposed Attorneys' Fees

PLG seeks an award of 33.3%, no larger than $500,000, representing a third of the Settlement Amount. (*Id.* at 11.) This award will include all litigation expenses and costs that PLG incurred throughout this action. (*Id.*)

"[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 445. "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of

the settlement fund are well within the range of reasonableness." *Rosenfeld*, 2021 WL 508339 at

*6 (quotes omitted) (collecting cases); *Cohan v. Columbia Sussex Mgmt., LLC*, No. CV 12-3203

(AKT), 2018 WL 4861391, at *2 (E.D.N.Y. 2018); *Azogue v. 16 for 8 Hosp. LLC*, No. 13-CV-

7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016) ("Class Counsel's request for one-third of the

Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 WL 5492998, at *26 (S.D.N.Y.

2013).

Here, counsel's proposed request for attorneys' fees limited to one-third of the Settlement

Amount is well within the range of reasonableness. *Camacho v. Barrier Group, Inc.*, No. 22 Civ.

1156 (AEK), 2025 WL 1269021, at *4 (S.D.N.Y. May 1, 2025) (quoting *Santos v. YMY Mgmt.

Corp.*, No. 20-cv-1992 (JPC), 2021 WL 431451, at *2 (S.D.N.Y.  Feb. 8, 2021) (stating that

"Courts in this District routinely award one third of a settlement fund as a reasonable fee in

FLSA cases.")). Therefore, the undersigned finds this factor weighs in favor of approval.

### d.  *Any Agreement Required to be Identified under Rule 23(e)(3)*

This factor requires the Court to consider any agreements made in connection with the

proposed settlement. *See* Fed. R. Civ. P. 23(e)(3).

According to the Settlement Agreement, Class Administrator will take $38,000.00 from

the Settlement Amount for its services. (ECF No. 140 at 11.) As discussed in subsection iii(b),

*supra*, Arden sent notices via First Class Mail to 1,150 Class Members and subsequently

attempted re-mailing via advanced address searches for any undeliverable Notices. (ECF No. 140

at 10.) This amount seems reasonable given the ratio of fees awarded in comparison to the total

settlement fund and the number of Class Members here. *See e.g., Mariani v. OTG Mgmt., Inc.*,

No. 16 CV 01751 (CLP), 2018 WL 10468036, at *11 (E.D.N.Y. Sept. 28, 2018) (granting an

award of $25,000 within a $300,000 settlement fund); *Ying v. All-Ways Forwarding of N.Y. Inc.*,
No. 20-CV-6242 (ENV)(MMH), 2025 WL 968586, at *17 (E.D.N.Y. Mar. 31, 2025) (granting
an award of $9,000 within a $775,000 settlement fund); *Flores v. CGI Inc.*, No. 22-CV-350
(KHP), 2022 WL 13804077, at *11 (S.D.N.Y. Oct. 21, 2022) (granting a $25,000 award within a
$435,000 settlement fund). Likewise, Arden's tasks will continue upon approval.

As it relates to the Settlement Agreement's release provisions, "[a] settlement cannot be
fair, reasonable and adequate if the Class-wide release is overbroad." *Oladapo v. Smart One
Energy, LLC*, No. 14-CV-7117 (LTS) (BCM), 2017 WL 5956907, at *14 (S.D.N.Y. 2017),
*report and recommendation adopted*, No. 14-CV-7117 (LTS) (BCM), 2017 WL 5956770
(S.D.N.Y. 2017).[9] Here, the Settlement Agreement provides that each Class Member agrees to
release the Releasees from any and all wage and hour claims that could have been brought in this
action from the period of May 16, 2020 (for FLSA claims) and from the period of May 16, 2017
(for NYLL claims) to the date of the final Court approval Order. (ECF No. 140-1 at § 4.1.)
However, the Members do not release their FLSA claims until the settlement check is endorsed.
(*Id.* at Exhibit A, 3.) Settlement agreements with nearly identical release language are often
granted approval. *See e.g.*, *Flores*, 2022 WL 13804077 at *2 (S.D.N.Y. 2022); *Solis v. OrthoNet
LLC*, No. 19-CV-4678 (VSB), 2021 WL 1904984, at *4 (S.D.N.Y. 2021). Accordingly, the
Court finds this factor weighs in favor of approval.

---

[9]  In non-class FLSA settlements, a settlement agreement's release provisions are of top concern.  In
*Cheeks*, the Court "specifically cited to overbroad releases that would 'waive practically any possible
claim against the defendants, including unknown claims and claims that have no relationship whatsoever
to wage-and-hour issues' as highlighting the 'potential for abuse' in FLSA settlements."  *Torres v. Mc
Gowan Builders*, No. 18 CV 6099 (RML), 2020 WL 5369056, at *3 (E.D.N.Y. 2020) (citing *Cheeks*, 796
F.3d at 206). Accordingly, Courts in this circuit have routinely rejected FLSA settlement agreements
containing such general releases. *Id.*

### iv.    *Equitable Treatment of Class members Relative to One Another*

This factor calls the Court to consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  In other words, "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

Plaintiff provides a formula that calculates what the individual Class Member will receive.  (ECF No. 140 at 11(i).) Specifically, the formula will

> (i) compute the total number of weeks worked by Participating Class Members throughout the Liability Period ("Workweeks"); (ii) divide the Net Settlement Fund by the Workweeks to determine the weekly allocation of the Net Settlement Fund (the "Weekly Allocation"); (iii) for each Participating Class Member, multiply the Weekly Allocation by the total number of weeks, including partial weeks rounded to the nearest tenth place, worked by that Participating Class Member during the Liability Period to compute each Participating Class Member's Individual Settlement Share of the Net Settlement Fund.

(*Id.*)

In addition, for individuals that worked "for at least one day but less than one week during the Liability Period shall be credited with one full Workweek for purposes of these calculations." (*Id.*) Settlement agreements, like this one, which provides class member awards derived by calculating each class member's share have been found to be an equitable distribution scheme. *See Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456 (RPK)(LB), 2021 WL 7906584, at *9 (E.D.N.Y. 2021); *see also Jackson v. Ampac Paper, LLC*, No. 22-CV-3120 (NSR) (JCM), 2025 WL 2346065 at *7 (S.D.N.Y. Aug. 13, 2025) (stating that pro rata distributions of a net settlement amount is evidence of equitable treatment.). Thus, this factor weighs in favor of approval.

14

    ***v.***     ***Ability of Defendants to Withstand Greater Judgment***

This is *Grinnell* Factor 7, which "does not fit neatly within any of the factors enumerated in Rule 23(e)(2)(C) but adds value to the Court's analysis." *Id.* The principle underlying this factor is that if a defendant could not withstand a judgment greater than the amount provided for in the settlement, the settlement is more likely to be reasonable, fair, and adequate. *Flores*, 2022 WL 13804077 at *8.

Here, Plaintiff contends that due to the Foreclosure transaction, Defendant is dissolving and thus, recovery absent this Court's approval is slim to none. (ECF No. 139 at 14.) Plaintiff attaches Defendant's Foreclosure Notice to its creditors and interested parties as an exhibit. (*See* ECF No. 140-2.) With this, the Court is able to determine that Defendant would not be able to "withstand a judgment greater than" the $1,500,000 settlement amount here. *Flores*, 2022 WL 13804077 at *8.

    ***vi.***     ***Reaction of the Class***

"'It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *Schutter v. Tarena Int'l, Inc.*, No 21-CV-3502 (PKC), 2024 WL 4118465 at *10 (E.D.N.Y. Sept. 9, 2024) (quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002)). In evaluating *Grinnell* Factor 2, "[c]ourts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of a settlement." *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014). Arden sent Notices via First Class Mail to 1,150 Class Members on June 25, 2025, of which 1,153 were successfully delivered. (ECF No. 140 at 13–14.) In both English and Spanish, Class Members were informed their right to opt out or object. (*Id.* at 12) At the time of filing of

15

Plaintiff's Unopposed Motion for Final Approval—September 2, 2025—no Class Members have opted out of or objected to the Settlement. (ECF No. 139 at 11–12.) Indeed, no objections were filed or heard at the Fairness Hearing. Nor were there any requests for exclusions from the Class. Resultantly, the Court finds this factor to weigh heavily in favor of approval of this Settlement.

### vii.    *Reasonableness of the Settlement*

*Grinnell* Factors 8 and 9 require the Court to consider the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. These two factors are often combined for the purposes of analysis. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47–48.

Determining whether a settlement amount is reasonable does not necessarily involve "a mathematical equation yielding a particularized sum." *Henry v. Little Mint, Inc.*, No. 12-CV-3996 (CM), 2014 WL 2199427, at *10 (S.D.N.Y. 2014). Rather, it considers a range of reasonableness which recognizes the uncertainties of law and fact and the accompanying costs of litigation. *Id.* For instance, a settlement which allows Class Members to be immediately paid is reasonable even if it means sacrificing a hypothetically larger amount if the matter were to proceed. *Id.*

Here, the Settlement Fund is $1,500,000. Plaintiff's Counsel submits that given the Defendant's current financial status and risk of on-going litigation, this settlement is reasonable. (ECF No. 139 at 12–14.) As previously noted, each Class Member will receive payment proportional to the duration of their employment; those who worked for longer periods will receive greater payments than those who worked for shorter periods. (ECF No. 140-1, Exhibit B.) Class Members will receive their checks through the Class Administrator's diligent process.

(ECF No. 139 at 5.) This is undoubtedly sooner than if each Class Member waited to receive payment after trial, assuming they were successful. This settlement amount reflects a balance of the strength of the Class Members' claims versus the risk of trial and thus appears to fall within the "range of reasonableness" set out in the eighth and ninth *Grinnell* factors. *See Henry*, 2014 WL 2199427 at *10.

In light of the foregoing, the undersigned grants final settlement approval.

### D. <u>Attorneys' Fees</u>

Here, PLG seeks fees equaling a total of one-third from the Settlement Fund, which would be $500,000 inclusive of costs and expenses. (ECF No. 139 at 16.) For class actions, a court may award reasonable attorneys' fees. *See* Fed. R. Civ. P. 23(h).

"In calculating attorneys' fees, courts have used one of two methods: the 'lodestar' method and the 'percentage-of-recovery' method. *Singh v. Anmol Food Mart, Inc.*, 768 F. Supp. 3d 434, 446 (E.D.N.Y. 2025) (citing *Allen v. Taylor*, 795 Fed. App'x 79, 80 (2d Cir. 2020)). The Second Circuit has held that either method is available for district courts to use when calculating attorneys' fees. *See Goldberger*, 209 F.3d at 50. However, regardless of the method, the Court must analyze the proposed award of fees with the following factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (quoting *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F.Supp. 160, 163 (S.D.N.Y.1989).

*First*, PLG has spent almost 500 hours on this matter, which includes *inter alia*, discovery, engaging in mediation, investigating the matter, drafting the settlement and communicating with Class Members. (ECF No. 139 at 18.) *Second and third*, the risks of

17

litigation are high as Defendant denied all allegations in its Answer, the amount of Class Members here and the fact that this is both a collective and class action settlement demonstrates the great size of this action and complexities of the litigation. (*Id.*; *see also* ECF No. 11.) *Fourth*, PLG's experience demonstrates the level of representation required for this type of case. As set forth in the Preliminary Approval (*see* ECF No. 135), PLG has handled over 500 wage-and-hour cases, and has likewise been appointed as class counsel in such cases. (ECF No. 140 at ¶¶ 66-83.) *Fifth*, the request fee in relation to the settlement, is an amount that Courts have routinely approved. *See Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-9194 (KHP), 2025 WL 100889, at \*10 (S.D.N.Y. Jan. 15, 2025) (collecting cases and awarding 1/3 of the settlement fund for attorneys' fees). *Sixth*, in consideration of public policy, "'FLSA and NYLL are remedial statutes designed to protect the wages of workers,' and the approval of fees in this case will further that statutory purpose." *Ying*, 2025 WL 968586, at \*14.

Moreover, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 415–16 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (citing *In re IMAX Sec. Litig.*, 2012 WL 3133476, at \*5 (S.D.N.Y. 2012)); *see also Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-CV-4216 (RLE), 2014 WL 3778173, at \*9 (S.D.N.Y. July 31, 2014) (internal citations omitted) ("Although the Court has discretion to award fees based on either the lodestar method or the percentage-of-recovery method, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.")

Therefore, in evaluating the requested fees amount in accordance with the *Goldberger* factors and the trend in this Circuit, the application is approved.

**E.  Service and Class Administrative Awards**

Plaintiff seeks a service award of $20,000 for her "instrumental role" in this case as she assisted PLG in the investigation, discovery, and negotiations. (ECF No. 139 at 16; 140 at ¶ 63-64.) Likewise, Plaintiff took the risk of being the named Plaintiff. (*Id.*) As no Class Member has objected to this award or Plaintiff as Class Representative, this weighs in favor of approval. (*See* ECF No. 140 at ¶ 65.)

Determining whether a plaintiff should be granted an additional service or incentive award is within the court's discretion and is meant to compensate a plaintiff for any personal risk incurred by her efforts. *Buchanan*, 2020 WL 8642081 at *8. Courts have found that based on the responsibility and personal risk taken by a plaintiff in an action such as this, service awards in the amount of $10,000 and release payments in the amount of $20,000—like those sought here of $20,000—are reasonable. *See Henry*, 2014 WL 2199427 (awarding service payment of $10,000); *Chang v. Philips Bryant Park LLC*, No. 17-CV-8816 (LTS) (SLC), 2019 WL 8105999, at *10 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted*, No. 17-CV-8816 (LTS) (SLC), 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020) (finding release payment of $20,000 reasonable).

Indeed, "such service awards are common in class action cases and are important to compensate lead plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained." *Rodriquez v. It's Just Lunch Int'l*, No. 07-CV-09227 (SN), 2020 WL 1030983, at *11–12 (S.D.N.Y. Mar. 2, 2020).

19

Next, Arden seeks $38,000 in fees for its role as Class Administrator. (ECF Nos. 139 at 20; 140-3 at 4.) Arden has assisted with distribution of the Notices and will continue to perform its duties upon final approval including tasks such as providing Settlement Checks and tracking deposits. (ECF No. 140 at ¶¶ 56-62.) *See D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21-CV-03334 (JMW), 2023 WL 4838156, at *13 (E.D.N.Y. July 28, 2023) (approval an administrative award of $25,000 from a settlement fund of $450,000) ("Specifically, this amount should be paid to them because they disseminated all notices, performed award calculations per Class Member, and maintained the correspondences with the Class Members.") In addition, no Class Member has objected to this award. *See Mills v. Cap. One, N.A.*, No. 14-CV-1937 (HBP), 2015 WL 5730008, at *18 (S.D.N.Y. Sept. 30, 2015). This amount is fair and reasonable with those that have been approved in this Circuit. *See e.g.*, *id.* (awarding class administrator fees of $23,000); *Flores*, 2022 WL 13804077, at *11 ($25,000 in administration fees); *Hunter v. Blue Ridge Bankshares, Inc.*, No. 23-CV-8944 (JAM), 2025 WL 1649323, at *5 (E.D.N.Y. June 11, 2025) (granting Counsel to use up to $100,000 for notice and administrator costs); *Jackson*, 2025 WL 2346065, at *7 (approving preliminarily an award of $25,000). Finally, the Court notes that the process for notice distribution to Class Members pursuant to the Preliminary Approval was fully complied with and commends Arden for its diligence to ensure due process was met. (*See* ECF No. 139 at 5-6.)

Accordingly, the Court confirms the appointment of Arden as Class Administrator, and the Service and Claims Administrator awards are approved.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Final Approval of the Class and

Collective Action Settlement (ECF No. 138) is **GRANTED**, and it is hereby **ORDERED** that:

(i)     The Parties and the Claims Administrator are directed to carry out their respective remaining duties as set forth in the Settlement Agreement filed at ECF No. 140-1;

(ii)    This action is hereby dismissed with prejudice;

(iii)   The Court shall retain exclusive and continuing jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement and this Final Approval; and

(iv)    The Clerk of the Court is directed to enter judgment accordingly and close out the case.


Dated:  Central Islip, New York
        September 19, 2025


                                        S O    O R D E R E D :


                                        /s/ *James M. Wicks*
                                        JAMES M. WICKS
                                        United States Magistrate Judge

21